Veronica M. Gray (State Bar No. 72572)
Nossaman LLP
18101 Von Karman Ave., Suite 1800
Irvine, CA  92612
Telephone:  (949) 477-7663; Fax:   (949) 833-7878
E-mail:  vgray@nossaman.com

Allison M. Dibley (State Bar No. 213104)
Nossaman LLP
50 California St., 34th Floor
San Francisco, CA  94111
Telephone:  (415) 438-7258; Fax:   (415) 398-2438
E-mail:  adibley@nossaman.com

Patricia J. Hill, Esquire (*pro hac vice*)
Yash B. Dave, Esquire (*pro hac vice*)
Smith, Gambrell & Russell, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
Telephone:     (904) 598-6100; Fax:  (904) 598-6240
E-mail:  pjhill@sgrlaw.com; ydave@sgrlaw.com

Attorneys for Plaintiff
Sunbelt Rentals, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SUNBELT RENTALS, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SANTIAGO VICTOR,<br><br>　　　　　Defendant.<br>_____ | CIVIL ACTION NO. C 13-4240 SBA<br><br>**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**<br><br>Date: January 7, 2013<br>Time: 1:00PM<br>Courtroom: 1, 4th Floor<br>Complaint Filed: September 12, 2013 |

\\\

\\\

\\\

\\\

\\\

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

NOTICE OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS ............... 1

INTRODUCTION ..................................................................................... 2

STATEMENT OF RELEVANT FACTS ..................................................................................... 2

MEMORANDUM OF LAW ..................................................................................... 3

    I.   Standard of Review..................................................................................... 3

    II.  Defendant Failed to Adequately Plead that Sunbelt Violated the Wiretap Act ............................... 3

        A.    Sunbelt Did Not "Intentionally Intercept" Defendant's Electronic Communications ............. 4

        B.    The iPhone is not a "Device" within the Purview of The Wiretap Act .................................. 5

    III.  Defendant Failed to Adequately Plead that Sunbelt Violated the SCA .................................. 7

    IV.  Defendant Failed To Adequately Plead that Sunbelt Violated His Right to Privacy ..................... 9

    V.  Defendant Failed To State a Cause of Action Under California Penal Code §§ 502 and 630 ...... 11

CONCLUSION ..................................................................................... 12

MEET AND CONFER CERTIFICATION ..................................................................................... 12

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Abraham v. Cnty. of Greenville*, 237 F.3d 286 (4th Cir. 2001) ................................ 5

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................... 3, 5, 14

5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................. 3, 5, 14

6

*Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................. 6, 7

7

*Freedom Banc Mortg. Servs., Inc. v. O'Harra,* No. 2:11-cv-01073, 2012 WL 3862209, at *1 (S.D. Ohio

8

  Sept. 5, 2012) .......................................................... 10

9

*Garcia v. City of Laredo*, 702 F.3d 788 (5th Cir. 2012) .......................... 9, 10

10

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (Cal. 2009) ..................... 10, 11

11

*Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183 (S.D. Cal. 2008)................ 10

12

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-CIV-1029, 2007 WL 4394447, at *1 (E.D. Pa. Dec.

13

  13, 2007) ....................................................... 6, 7, 8, 13

14

*In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003).............................. 4

15

*Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2013 WL 5781581, at *1 (N.D. Cal. Oct. 25, 2013)

16

  ................................................................. 13

17

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ...................... 4

18

*Loucks v. Ill. Inst. of Tech.*, No. 12 C 4148, 2012 WL 5921147, at *1 (N.D. Ill. Nov. 20, 2012) ............ 5

19

*People v. Buchanan*, 26 Cal. App. 3d 274 (Cal. Ct. App. 1972) ..................... 14

20

*Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds sub*

21

  *nom., City of Ontario, Cal. v. Quon,* 560 U.S. 746 (2010) ..................... 11, 12

22

*Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907 (Cal. 1999) ....................... 11

23

*Sanders v. Robert Bosch Corp.*, 38 F.3d 736 (4th Cir. 1994) ..................... 4, 5

24

*Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200 (Cal. 1994) ..................... 11

25

*U.S. v. Jones*, 149 Fed. Appx. 954 (11th Cir. 2005) ......................... 12

26

*U.S. v. King*, 55 F.3d 1193 (6th Cir. 1995).............................. 12

27

*U.S. v. Maxwell,* 45 M.J. 406 (C.A.A.F. 1996).......................... 11, 12

28

*U.S. v. Townsend*, 987 F.2d 927 (2d Cir. 1993)........................... 4, 5

**Statutes**

18 U.S.C. § 2510 ........................................................................................... 4, 6, 9

18 U.S.C. § 2511 ................................................................................................. 3

18 U.S.C. § 2701 ................................................................................................. 9

Cal. Penal Code § 630 ................................................................................... 3, 14

Cal. Penal Code §§ 502 ............................................................................ 3, 13, 14

**Other Authorities**

H.Rept. 99-647 (1986) ........................................................................................ 4

*Webster's Ninth New College Dictionary* 630 (1985) ........................................ 4

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

**CASE NO.:  C 13-4240 SBA**

## **NOTICE OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

PLEASE TAKE NOTICE that on January 7, 2014, at 1:00 P.M., or as soon thereafter as Plaintiff Sunbelt Rentals, Inc. ("Plaintiff" or "Sunbelt") may be heard before the Honorable Judge Armstrong, in Courtroom 1 of the above-titled Court, located at 1301 Clay St., Oakland, California 94612, Plaintiff's Motion to Dismiss will be heard.  This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Defendant Santiago Victor failed to allege sufficient facts to support his Counterclaims, and thus failed to state  viable causes of action against Sunbelt.

This Motion to Dismiss is based upon this Notice of Motion and Motion, the accompanying Memorandum of Law, all pleadings and papers on file in this action and upon such additional oral and/or written argument as the Court may permit at the time of hearing.


Dated:  November 22, 2013

Respectfully Submitted,

SMITH, GAMBRELL & RUSSELL, LLP


By: s/ Yash B. Dave_____

Yash B. Dave, Esquire (*pro hac vice*)

*Attorneys for Plaintiff Sunbelt Rentals, Inc.*

Plaintiff Sunbelt Rentals, Inc. ("Plaintiff" or "Sunbelt"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves this Court to dismiss Defendant Santiago Victor's ("Defendant" or "Victor") Counterclaims presented in Defendant's First Amended Answer to Plaintiff's Complaint for Injunctive Relief and Damages; Demand for Jury Trial; and Counterclaim ("Counterclaims"), and as grounds therefor states the following:

## INTRODUCTION

Sunbelt hired Defendant as an outside sales representative, and in consideration thereof, Defendant entered into an employment agreement containing non-solicitation and non-disclosure provisions.  During his employment, Sunbelt provided Defendant with a Sunbelt-issued iPad and iPhone to further facilitate the performance of his services for Sunbelt.  Through no affirmative action of Sunbelt, Defendant "synced" his personal Apple account with the Sunbelt iPhone.  Defendant tendered his resignation with Sunbelt and immediately began working with Sunbelt's competitor, Ahern Rentals, Inc.  Upon his resignation, Sunbelt required that Defendant return the iPad and iPhone.  However, Sunbelt continued to receive text messages on its iPhone from Defendant after his resignation due to the Defendant's prior "sync" of the device with his Apple account.  Defendant amended his original Answer to Sunbelt's Complaint for Injunctive Relief and Damages, and now attempts to shift all wrongdoing to Sunbelt for viewing the messages sent directly to its iPhone by asserting counterclaims for violations of the Federal Wiretap Act ("Wiretap Act"), the Stored Communications Act ("SCA"), California Penal Code §§ 502 and 630, and common law invasion of privacy.  Sunbelt offers this Motion to Dismiss in response.

## STATEMENT OF RELEVANT FACTS

While Sunbelt denies many of the allegations set forth in Defendant's Counterclaims, Sunbelt recognizes that Defendant's well-pleaded facts must be accepted as true.  For purposes of this Motion to Dismiss, the relevant facts are as follows:

During Defendant's employment with Sunbelt as an outside sales representative, Sunbelt provided Defendant with an Apple iPhone and iPad.  (Def.'s Countercl. ¶¶ 11, 12)  After being dismissed from employment on or about August 19, 2013, Defendant returned the iPhone and iPad to Sunbelt.  *Id.* at ¶ 18.  When Defendant received a new iPhone, Defendant "synced" the new phone with

1   the other devices registered to his Apple account.  *Id.* at ¶ 19.   Defendant failed to remove the Sunbelt

2   registered iPhone from his Apple account, causing Defendant's text messages to forward directly to

3   Sunbelt's iPhone.  *See id.* at ¶ 20.  Defendant alleges that by viewing the text messages on Sunbelt's

4   iPhone, Sunbelt accessed "facilities" through which Defendant's electronic communications were

5   provided and stored, and subsequently used this information to investigate Defendant in violation of the

6   Stored Communications Act and the Wiretap Act.  *Id.* at ¶¶23, 32, and 46.  Moreover, Defendant asserts

7   that by viewing the text messages sent directly to its iPhone, Sunbelt violated California Penal Code §§

8   502 and 630 as well as Defendant's right of privacy.  *Id.* at ¶¶ 56, 67-70, and 81.

9   <u>**MEMORANDUM OF LAW**</u>

10  **I.      Standard of Review**

11         In order to withstand Sunbelt's Motion to Dismiss, the movant must do more than allege "labels

12  and conclusions, and a formulaic recitation of the elements of a cause of action…"  *Bell Atl. Corp. v.*

13  *Twombly*, 550 U.S. 544,555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Such allegations must

14  be sufficient to "raise a right to relief above the speculative level…" *Twombly,* 550 U.S. at 555.

15  Pursuant to the holdings in *Twombly* and *Iqbal*, Defendant failed to allege sufficient facts to support his

16  Counterclaims, and thus failed to state a viable cause of action against Sunbelt.   Consequently, this

17  Court should dismiss Defendant's Counterclaims.  *See* Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at

18  555.

19  **II.     Defendant Failed to Adequately Plead that Sunbelt Violated the Wiretap Act**

20         To adequately state a claim under the Wiretap Act, 18 U.S.C. § 2510, *et seq*., Defendant must

21  allege facts that Sunbelt "intentionally intercept[ed]...any wire, oral, or electronic communication."  18

22  U.S.C. § 2511(1)(a).  "Intercept" is defined as the "aural or other acquisition of the contents of any wire,

23  electronic, or oral communication through the use of any electronic, mechanical, or other device."  18

24  U.S.C. § 2510(4).  First, Defendant failed to sufficiently plead facts to support his claim that Sunbelt

25  "intentionally intercepted" the text messages at issue.  Second, Defendant failed to sufficiently plead

26  facts to support that Defendant's alleged interception was accomplished through the use of a "device" as

27  defined under the Wiretap Act.

28

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

**CASE NO.:  C 13-4240 SBA**

## A.  Sunbelt Did Not "Intentionally Intercept" Defendant's Electronic Communications

The Ninth Circuit Court of Appeals has previously defined "intercept" as "to stop, seize, or interrupt in process or course before arrival."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (citing *Webster's Ninth New College Dictionary* 630 (1985)).  Prior to 1986, the Wiretap Act expressly proscribed only willful interceptions.  However, "[i]n order to underscore that the inadvertent reception of a protected communication is not a crime, the subcommittee changed the state of mind requirement under Title III of the Omnibus Crime Control and Safe Streets Act of 1986 from 'willful' to 'intentional.'"  S. Rept. 541 at 24 (1986).  This provision makes it clear that an inadvertent interception of a protected communication is not unlawful. H.Rept. 99-647, at 48-49 (1986).  "Intentional" means more than that one "voluntarily engaged in conduct or caused a result."  *In re Pharmatrak*, *Inc.*, 329 F.3d 9, 23 (1st Cir. 2003).   The conduct must have been the person's conscious objective, and an act is not intentional if it is the product of inadvertence or mistake.  *Id.*; *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742-43 (4th Cir. 1994); *U.S. v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993).  Moreover, the merit of a party's motive is not dispositive in the determination of whether a party engaged in prohibited conduct.  *Pharmatrak*, 329 F.3d at 23; *Abraham v. Cnty. of Greenville*, 237 F.3d 286, 391-92 (4th Cir. 2001) (holding that a jury instruction stating "defendant's motive is not relevant" to determine intent under § 2511 was proper).

In his Counterclaim, Defendant alleges that Sunbelt provided him with an Apple iPhone and iPad. (Def.'s Countercl. ¶ 12)  Defendant then states that he personally linked both devices through his personal Apple account, but fails to allege that Sunbelt had any involvement in this conduct.  *Id.* at ¶ 15. Moreover, Defendant then states that he subsequently registered his new Ahern-issued iPhone to the same Apple account he previously linked to Sunbelt's iPhone.  *Id.* at ¶ 19.   Defendant's conduct then "simply 'synced' Victor's new phone with his Apple account…"  *Id.*  Defendant alleges that Sunbelt intentionally intercepted his electronic communications, but nowhere in his Counterclaim does Defendant allege any actual conduct of Sunbelt that amounts to an intentional interception. Defendant's admissions in paragraphs 15 and 19 of his Counterclaim preclude the application of the Wiretap Act as Sunbelt's receipt of the text messages was inadvertent due to a mistake on Defendant's part in "syncing"

1   his new iPhone to his Apple account and failing to remove Sunbelt's iPhone from the Apple account.

2   *See Pharmatrak*, 329 F.3d at 23; *Sanders*, 38 F.3d at 742-43; *Townsend*, 987 F.2d at 930.

3          To Sunbelt's knowledge, no case has found the Wiretap Act applicable where the defending

4   employer-party took no affirmative action to intercept the communication, particularly where the

5   employee's own negligence led to the transmission and reception of said communication.   To the

6   contrary, other courts have held that even an employer's *negligent* act that caused an interception was

7   not sufficient to warrant liability under the Wiretap Act.  *See, e.g., Loucks v. Ill. Inst. of Tech.*, No. 12 C

8   4148, 2012 WL 5921147, at *2 (N.D. Ill. Nov. 20, 2012) (holding that employer's negligent act in

9   recording and logging text messages did not give rise to a claim under the Wiretap Act).   Therefore,

10  Plaintiff has failed to satisfy the *Iqbal* and *Twombly* standard by failing to sufficiently plead facts to

11  establish that Sunbelt intentionally intercepted Defendant's electronic communications.

      **B.**      **The iPhone is not a "Device" within the Purview of The Wiretap Act**

13         To state a claim under the Wiretap Act, a plaintiff must allege that a communication was

14  intentionally intercepted by the use of an "electronic, mechanical, or other device."   18 U.S.C. §

15  2510(4); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-CIV-1029, 2007 WL 4394447, at *4 (E.D.

16  Pa. Dec. 13, 2007).  "The Court need not accept a conclusory allegation that conduct alleged in the

17  complaint constituted an interception under the Wiretap Act."  *Crowley v. Cybersource Corp.*, 166 F.

18  Supp. 2d 1263, 1268 (N.D. Cal. 2001).

19         Here, Defendant failed to allege that Sunbelt used a "device" to intercept the relevant

20  communications.  *See Crowley*, 166 F. Supp. 2d at 1268; *Wesley Coll. v. Pitts*, 974 F. Supp. 2d 375, 385

21  (D. Del. 1997) (interception does not occur absent the use of a device).  In *Crowley*, the plaintiffs

22  alleged that Amazon.com intercepted user information, including identity and credit information, and

23  subsequently relayed this information to a third party, Cybersource, for credit verification.  166 F. Supp.

24  2d at 1266.  Cybersource then compiled this information and information from other vendors into a

25  database profiling the purchasers.  *Id.*  The district court granted Amazon's motion to dismiss the claim

26  under the Wiretap Act because "Amazon did not acquire [the communication] using a device other than

27  the drive or server on which the e-mail was received…Amazon acted as no more than the second party

28  to a communication." *Id.* at 1269.  The court went on to state that "[h]olding that Amazon, by receiving

an e-mail, intercepted a communication…would be akin to holding that one who picks up a telephone to receive a call has intercepted a communication…such a result would effectively remove from the definition of 'intercept' the requirement that the acquisition be through a 'device.'" *Id.*

Furthermore, the court in *Ideal Aerosmith Inc. v. Acutronic USA, Inc.*, answered the question of whether an *inadvertent* recipient of an electronic or wire communication could be deemed to have deployed a "device" for purposes of the Wiretap Act. 2007 WL 4394447, at *5-6. There, Plaintiff Ideal Aerosmith, Inc. ("Ideal") and competitor Acutronic USA, Inc. ("Acutronic") were both engaged in the business of manufacturing aerospace related training and testing equipment. *Id.* at *1. Ideal was interested in purchasing a smaller competitor, Carco Electronics ("Carco") that was experiencing financial difficulty and had recently filed for bankruptcy protection under Chapter 11. *Id.* Ideal attempted to position itself to acquire Carco by entering into an asset purchase agreement and hiring most of Carco's former employees, pending the bankruptcy court's approval of the sale. *Id.* at *2. The former Carco employees continued to use their Carco e-mail addresses during this period. *Id.* The bankruptcy court ultimately held an auction of Carco's assets and Acutronic outbid Ideal, forcing Ideal to tender possession of Carco's facilities that contained Carco's e-mail servers. *Id.* The former Carco employees hired by Ideal were assigned new e-mail addresses, but some employees and third-parties doing business with Ideal inadvertently sent communications using the old Carco e-mail addresses. *Id.* These e-mails, many of which contained Ideal's confidential information and trade secrets, ended up on the former Carco servers that were acquired by Acutronic. *Id.* Acutronic read the messages, never disabled the old Carco addresses, never informed the senders that the intended recipients no longer owned the addresses, and never forwarded the messages to the intended recipients. *Id.*[1]

The *Acutronic* court held that the continued receipt of unintended e-mails on its servers did not constitute the use of a "device" for the purposes of the Wiretap Act. *Id.* Moreover, as owner of the server, Acutronic was considered a direct party to the communication. *Id.* at *5. The court dismissed

---

[1] The court noted that the Pennsylvania Wiretapping Act that Ideal brought its claims under tracked the language set forth in the Wiretap Act, and theretofore had been interpreted identically. *Id* at *3; *see Fraser v. Nationwide Mut. Ins.Co.*, 352 F.3d 107, 113 n. 6 (3d Cir. 2004).

1  Ideal's argument that Acutronic was not the intended recipient as having "no legal bearing where the

2  communication was nonetheless sent to Carco/Acutronic." *Id.*

3  The facts are essentially the same here:  Sunbelt reacquired its iPhone from Defendant upon his

4  resignation and, through no fault of Sunbelt, continued to receive communications from its prior user.

5  Because Sunbelt was the recipient of the message, whether intended or not, it cannot be said that

6  Sunbelt's own iPhone was a "device" under the Wiretap Act.  Such an interpretation would bring any

7  personal device that receives an unintended electronic communication within the purview of the Act,

8  and subject unsuspecting users of these devices to criminal liability.  Sunbelt's use of such information

9  under this statute is irrelevant where there was no "interception" by a "device" to begin with.

10  Therefore, because Sunbelt did not use a "device," or have the conscious objective to

11  "intentionally intercept" Defendant's communications, particularly where Defendant pled in his

12  allegations that he personally "synced" Sunbelt's device with his Apple account, Defendant is incapable

13  of pleading sufficient facts to bring Sunbelt's conduct within the Wiretap Act.  As such, this Court

14  should dismiss Defendant's First Counterclaim.

15  **III.      Defendant Failed to Adequately Plead that Sunbelt Violated the SCA**

16  To state a claim under the SCA, Defendant must allege sufficient facts establishing that Sunbelt

17  (1) intentionally accessed without authorization a facility through which an electronic communication

18  service is provided, or (2) intentionally exceeded authorization to access that facility, and thereby

19  obtained access to a wire or electronic communication while it was in electronic storage in such system.

20  18 U.S.C. § 2701

21  Defendant asserts in his Counterclaim that Sunbelt violated the SCA by "intentionally accessing

22  Victor's post-employment electronic communications without authorization, and obtaining access to a

23  wire or electronic communication while in electronic storage..."  (Def.'s Countercl. ¶ 46)  "Electronic

24  storage" is defined as:

> (A) Any temporary, intermediate storage of a wire or electronic
> communication incidental to the electronic transmission thereof; and (B)
> any storage of such communication by an electronic communication
> service for purposes of backup protection of such communication.

28  18 U.S.C. § 2510(17).

7

It appears from Defendant's Counterclaim that he is asserting Sunbelt violated the latter provision and accessed electronic communications while in storage by an electronic communication service for purposes of backup protection.  (*See* Def.'s Countercl. ¶ 45)  To the contrary, text messages are sent and saved directly to the iPhone's physical storage system.  While it is possible to *back up* iPhone text messages to the electronic communication service provider's storage system, iCloud, by signing up for an iCloud account and *choosing such a setting*, such a claim was never sufficiently pled by Defendant.  Regardless, the determination is irrelevant as the SCA does not extend to protect personal data such as text messages that are stored on the cellular phone. *See Garcia v. City of Laredo*, 702 F.3d 788, 793 (5th Cir. 2012).  To the extent that Defendant alleges that Sunbelt "accessed" the iCloud, Defendant failed to plead facts sufficient to state a cause of action.  *See Twombly*, 550 U.S. at 556.

In *Garcia*, a former police dispatcher brought an action against the city and city officials alleging that a police officer's wife took his cell phone and accessed text messages and images found on the phone, and subsequently the officer was terminated due to the images that depicted him violating department policies.  702 F.3d at 790.  Garcia argued that the SCA protected all text messages and data stored on his cell phone.  *Id.* at 791.  However, the court refused to extend such protection to the storage of text messages and pictures on a personal phone as these were not accessed from an "electronic communication service provider."  *Id.* at 793.  Information stored temporarily pending delivery or for backup purposes is in electronic storage, but information stored to a hard drive or cell phone does not qualify.  *Id.* (citing *Freedom Banc Mortg. Servs., Inc. v. O'Harra,* No. 2:11-cv-01073, 2012 WL 3862209, at *8-9 (S.D. Ohio Sept. 5, 2012)); *see Hilderman v. Enea TekSci, Inc.,* 551 F. Supp. 2d 1183, 1205 (S.D. Cal. 2008) (holding that e-mails stored on a laptop are not in electronic storage for purposes of the SCA).

Pursuant to the holding in *Garcia*, merely accessing someone's text messages on a cell phone does not violate the SCA.  Defendant has attempted to circumscribe these holdings by alleging that the text messages are "processed and stored" on the Apple account, or the "cloud."  (*See* Def.'s Countercl. ¶ 45)  Such an allegation is misleading to the Court, as one does not access information that is in "electronic storage" when reading a text message sent directly to a cell phone.  "Syncing" two devices

8

1    merely means that the message will be sent directly to both devices.  (*See* Def.'s Countercl. ¶¶ 15, 19)

2    Sunbelt simply accessed text messages that were received and stored on its personal phone—actions that

3    do not fall within the purview of the SCA.  *See Garcia,* 702 F.3d at 793.  For the foregoing reasons,

4    Sunbelt requests that this Court dismiss Defendant's counterclaim regarding Sunbelt's alleged violation

5    of the SCA.

6    **IV.    Defendant Failed To Adequately Plead that Sunbelt Violated His Right to Privacy**

7              To state a claim for invasion of privacy under California law, the Defendant must allege facts

8    establishing that Sunbelt *intentionally* intruded into a place, conversation, or matter as to which the

9    plaintiff has a reasonable expectation of privacy, and the intrusion must occur in a manner highly

10   offensive to a reasonable person.  *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 285 (Cal. 2009);

11   *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 227 (Cal. 1994).

12             Regarding the first element of the common law tort, Sunbelt must have "penetrated some zone of

13   physical or sensory privacy…or obtained unwanted access" to the data by electronic means in violation

14   of the law.  *Hernandez*, 47 Cal. 4th at 285.  Moreover, Defendant's expectation of privacy must have

15   been "objectively reasonable." *Shulman,* 18 Cal. 4th at 232.  The factors used to determine whether

16   Defendant had an "objectively reasonable" expectation of privacy are:  1) the identity of the intruder, 2)

17   the extent to which other persons had access to the subject place, and 3) the means by which the

18   intrusion occurred.  *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 923 (Cal. 1999).

19             The Ninth Circuit previously held that an expectation of privacy exists in text messages stored by

20   an electronic communications service provider.  *Quon v. Arch Wireless Operating Co., Inc.,* 529 F.3d

21   892, 905 (9th Cir. 2008), *rev'd on other grounds sub nom., City of Ontario, Cal. v. Quon,* 560 U.S. 746

22   (2010).  In that decision, the Ninth Circuit cautioned against such a "monolithic" interpretation of its

23   holding by stating that the sender of an electronic communication would have no reasonable expectation

24   of privacy should the recipient choose to reveal its contents.  *Id.* at 906 (citing *U.S. v. Maxwell,* 45 M.J.

25   406, 418 (C.A.A.F. 1996) ("[T]he maker of a telephone call has a reasonable expectation that police

26   officials will not intercept and listen to the conversation; however, the conversation itself is held with

27   the risk that one of the participants may reveal what is said to others."))

28

1   The privacy expectation in text messages is analogous to the privacy expectations in e-mail or

2   written letters.  *Quon,* 529 F.3d at 905 ("we see no difference between…e-mails…and the text messages

3   at issue here.")  Courts have generally held that a sender of an e-mail or letter has a diminished, if any,

4   expectation of privacy once the communication is delivered.  *See Maxwell*, 45 M.J. at 417 (when an e-

5   mail is "received and opened, the destiny of the [e-mail] then lies in the control of the recipient…not the

6   sender."); *U.S. v. Jones*, 149 Fed. Appx. 954, 959 (11th Cir. 2005) ("If a letter is sent to another, the

7   sender's expectation of privacy ordinarily terminates upon delivery.") (quoting *U.S. v. King*, 55 F.3d

8   1193, 1195-96 (6th Cir. 1995)).

9   Defendant stated in his Counterclaim that he intentionally "synced" his Apple account to the

10   Sunbelt-issued iPhone, and was unaware that his actions had left the two devices linked until several

11   weeks later.  (Def.'s Countercl. ¶¶ 19, 20)  As Sunbelt was the recipient of these messages, whether

12   intended or not, Defendant had no reasonable expectation of privacy in the contents of the messages

13   upon delivery.  *See Maxwell*, 45 M.J. at 417; *Jones*, 149 Fed. Appx. at 959; *King*, 55 F.3d at 1195-96.

14   The inadvertent sending of text messages is a common occurrence in the modern world, and to hold the

15   recipient of such a message that took no action to procure the communication (e.g., implant a "device"

16   to wiretap the communication) would lead to untenable results.  To date, Sunbelt is unaware of any court

17   that has held the recipient of an unintended text message liable for reading the contents of the message.

18   The absence of such holdings is logical when viewed from a practical standpoint.  For instance, an e-

19   mail user may inadvertently copy or forward an e-mail to an unintended recipient.  If the contents of that

20   e-mail are disparaging to the recipient, the recipient has no duty to delete the e-mail or inform the e-mail

21   user of his or her negligent action.  However, Defendant's application of the common law invasion of

22   privacy tort to the instant situation would impart liability on the *recipient* in such a situation for merely

23   accessing her e-mail messages.  *See Acutronic*, 2007 WL 4394447, at *4-5 (holding that Acutronic's

24   status as an unintended recipient has no legal bearing).  Such an application is particularly burdensome

25   to innocent recipients that must access the contents of the message in order to determine whether or not

26   they are an intended recipient of the communication (e.g., a recipient of a text message is required to

27   view its contents to determine the intended recipient as a text message merely displays the sender's

28   name and the textual content of the message).  Moreover, Sunbelt took no affirmative action to "access"

10

1    Defendant's Apple account, nor are any facts alleged to support a finding that Sunbelt took such

2    affirmative action, as text messages from linked devices do not require access to the actual account or a

3    necessary login ID/password prior to displaying the message.

4           As Sunbelt was the recipient of the text message, took no affirmative action to access

5    Defendant's account or intercept any communication, and Defendant expressly stated that the "syncing"

6    of the devices was caused by his own actions (or negligence), Defendant has no actionable claim under

7    California's invasion of privacy tort.  Defendant's pleading is not only insufficient to state such a cause

8    of action, it is a thinly veiled attempt to shift wrongdoing to Sunbelt when he was, to quote Defendant,

9    caught with his "hand in the cookie jar."

10    **V.**      **Defendant Failed To State a Cause of Action Under California Penal Code §§ 502 and 630**

11           For the reasons set forth above, Defendant's counterclaims involving Sunbelt's alleged violations

12    of §§ 502 and 630 of California's Penal Code should be dismissed as well.  Section 502 otherwise

13    known as the Comprehensive Computer Data Access and Fraud Act, was designed as an anti-hacking

14    statute to prohibit the unauthorized use of a computer system for improper or illegitimate purposes.

15    *Integral Dev. Corp. v. Tolat*, No. C 12-06575 JSW, 2013 WL 5781581, at *3 (N.D. Cal. Oct. 25, 2013).

16    Section 630, otherwise known as the California Invasion of Privacy Act states, in pertinent part, that:

17
18
19
20

> The Legislature hereby declares that advances in science and technology have led to the development of new *devices* and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such *devices* and techniques has created a threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

21    Cal. Penal Code § 630 (emphasis added).  As previously discussed in Sunbelt's argument for dismissal

22    of Defendant's counterclaim for violation of the Wiretap Act, Sunbelt did not employ the use of a

23    "device" necessary to satisfy that an interception was made.  Moreover, much like the Wiretap Act, the

24    Invasion of Privacy Act only covers intentional and not inadvertent interceptions.  *People v. Buchanan*,

25    26 Cal. App. 3d 274, 288-89 (Cal. Ct. App. 1972).

26
27
28

1   Moreover, Defendant's allegations are not sufficient to allow Sunbelt to prepare its defense, as

2   the only factual allegations in the Fourth and Fifth Counterclaims are a mere recitation of statutory

3   tracking language that does nothing to elucidate how Sunbelt accomplished these violations.[2]   The fact

4   that this same verbiage appears in two statutory actions and one common law cause of action is

5   indicative of its "unadorned, the [plaintiff] unlawfully-harmed-me" nature.   *See Iqbal,* 556 U.S. at 678.

6   A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of

7   action will not do."   *Id.* (citing *Twombly*, 550 U.S. at 556)   Moreover, Defendant's counterclaims do not

8   suffice as they are merely "naked assertion[s]" devoid of "further factual enhancement."   *Id.* (citing

9   *Twombly,* 550 U.S. at 557)   Sunbelt must be apprised of how its "access" of the text messages on its

10   own iPhone violated California Penal Code §§ 502 and 630.

## CONCLUSION

12   Defendant's Counterclaims are merely an attempt to shift the blame to the blameless in order to

13   detract from his violations of California law through his improper behavior.   Defendant failed to

14   adequately plead that Sunbelt "intentionally intercepted" his electronic communications and he failed to

15   adequately plead that such an interception was accomplished through the use of a "device" as required

16   under the Wiretap Act and the California Penal Code.   Defendant failed to sufficiently plead that the text

17   messages at issue were in "electronic storage" as required under the SCA.   Lastly, Defendant failed to

18   state a cause of action for invasion of privacy, as the Defendant had no such expectation upon the

19   delivery of his text messages.   For these reasons, Defendant's Counterclaims should be dismissed.

## MEET AND CONFER CERTIFICATION

21   Pursuant to the Court's Standing Order, Sunbelt's counsel hereby certifies that he conferred with

22   Defendant's counsel via teleconference and e-mail on November 21, 2013 regarding the merits of this

23   Motion to Dismiss.   However, counsel did not reach an agreement.

24   \\\

25   \\\

26

27

28   [2]  In his Counterclaim, Defendant alleges three times that Sunbelt violated three separate laws by "accessing, intercepting, monitoring, reviewing, storing, and using Victor's post-employment private electronic data and electronic communications…"  (*See* Pl.'s Countercl. ¶¶ 22, 56, and 77)

12

1   Dated: November 22, 2013.

2

3                                           Respectfully Submitted,

4                                           **SMITH, GAMBRELL & RUSSELL, LLP**

5

6                                           By: s/ Patricia J. Hill
                                                Patricia J. Hill, Esquire (*pro hac vice*)
7                                               Yash B. Dave, Esquire (*pro hac vice*)
                                                50 N. Laura Street, Suite 2600
8                                               Jacksonville, Florida 32202
                                                Telephone:  (904) 598-6100
9                                               Facsimile:  (904) 598-6240
                                                E-mail:  pjhill@sgrlaw.com
10                                              E-mail:  ydave@sgrlaw.com

11                                              Veronica M. Gray (State Bar No. 72572)
                                                Allison M. Dibley (State Bar No. 213104)
12                                              Nossaman LLP
                                                50 California St., 34th Floor
13                                              San Francisco, CA  94111
                                                Telephone:  (415) 438-7258
14                                              Facsimile:  (415) 398-2438
                                                E-mail:  vgray@nossaman.com
15                                              E-mail:  adibley@nossaman.com

16                                          *Attorneys for Plaintiff Sunbelt Rentals, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

                                            13

1

## CERTIFICATE OF SERVICE

2

3       I HEREBY CERTIFY that on this 22nd day of November, 2013, I electronically filed the

4  foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic

5  filing to the following:

6

7            Beth A. Kahn, Esq.
             BKahn@mpplaw.com
8            Kevin M. Pollack, Esq.
             kpollack@mpplaw.com
9            MORRIS POLICH & PURDY LLP
             1055 West Seventh Street, 24th Floor
10           Los Angeles, CA  90017

11                                    s/ Patricia J. Hill

12                                              Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

**CASE NO.:  C 13-4240 SBA**