Beth A. Kahn (SBN 134158)
BKahn@mpplaw.com
Timothy J. Toohey (SBN 140117)
TToohey@mpplaw.com
Kevin M. Pollack (SBN 272786)
kpollack@mpplaw.com
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:      (213) 891-9100
Facsimile:      (213) 488-1178

Attorneys for Defendant

Santiago Victor

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| SUNBELT RENTALS, INC. | **Case No.:** C 13-4240 SBA |
| Plaintiff, | Assigned to: Hon. Saundra B. Armstrong |
| vs. | |
| SANTIAGO VICTOR, | **DEFENDANT AND CROSS-CLAIMANT SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS** |
| Defendant. | |
| | Date: January 7, 2014<br>Time: 1:00 p.m.<br>Courtroom: 1, 4th Floor<br>Complaint Filed September 12, 2013<br>Counterclaim Filed: November 1, 2013 |

Defendant Santiago Victor ("Victor") hereby submits his opposition to Plaintiff's

motion to dismiss Victor's counterclaims.

///

///

i

1    Date: December 6, 2013                    MORRIS POLICH & PURDY LLP

2                                              Beth A. Kahn
3                                              Timothy J. Toohey
                                               Kevin M. Pollack
4

5                                              By: _____
                                                    Kevin M. Pollack
6                                              Attorneys for Defendant Santiago Victor

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     STANDARD OF REVIEW .................................................................................. 2

III.    VICTOR ADEQUATELY ALLEGES VIOLATIONS OF THE WIRETAP ACT......... 2

    A.      Sunbelt Contemporaneously Intercepted Victor's Private
        Communications. ......................................................................................... 3

    B.      Victor Did Not Consent To Having His Information Accessed. .......................... 6

    C.      Sunbelt Made Use Of A Device. .......................................................... 7

IV.     VICTOR ADEQUATELY ALLEGES VIOLATIONS OF THE SCA........................... 9

V.      THE COUNTERCLAIM STATES A CLAIM FOR INVASION OF PRIVACY......... 10

    A.      Victor has Reasonable Expectation of Privacy in his Post-Employment
        Private Electronic Communications and Data ...................................... 11

    B.      Sunbelt's Intrusion Would Be Highly Offensive to a Reasonable Person ......... 12

VI.     VICTOR SUFFICIENTLY ALLEGES VIOLATIONS OF PENAL CODE § 502....... 13

VII.    VICTOR SUFFICIENTLY PLEAD VIOLATIONS OF PENAL CODE § 630 et
    seq. ..................................................................................................................... 14

VIII.   IF THE MOTION IS GRANTED VICTOR REQUESTS LEAVE TO AMEND ......... 15

IX.     CONCLUSION..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................................... 2

*City of Ontario, Calif. v. Quon,*
   130 S.Ct. 2619 (2010) .................................................................................... 11, 12, 13

*Coulter v. Bank of America Nat'l Trust & Sav. Ass'n,*
   28 Cal.App.4th 923 (1994) ......................................................................................... 15

*Craigslist, Inc. v. Naturemarket, Inc.,*
   694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..................................................................... 14

*Crowley v. Cybersource Corp.,*
   166 F.Supp.2d 1263 (N.D.Cal. 2001) ....................................................................... 7, 8

*Erickson v. Pardus,*
   551 U.S. 89 (2007)........................................................................................................ 2

*Facebook, Inc. v. ConnectU LLC,*
   489 F.Supp.2d 1087 (N.D.Cal.2007).......................................................................... 14

*Freedom Blanc Mortg. Servs., Inc. v. O'Harra,*
   2012 WL 3862209 at *9 (S.D.Ohio) ............................................................................ 9

*Garcia v. City of Laredo,*
   702 F.3d 788, 793 (5th Cir. 2012) ................................................................................ 9

*Griggs-Ryan v. Smith,*
   904 F.2d 112 (1st Cir. 1990)......................................................................................... 7

*Ideal Aerosmith, Inc. v. Accutronic USA, Inc.,*
   2007 WL 4394447 (W.D.Pa. 2007)........................................................................... 7, 8

*In re iPhone Application Litig,*
   844 F.Supp.2d 1040 (N.D.Cal. 2012) ........................................................................ 10

*In re Pharmatrak, Inc.,*
   329 F.3d 9, 22-23(1st Cir. 2003), ............................................................................. 5, 7

*Kight v. CashCall, Inc.,*
   200 CalApp.4th 1377 (2011) ...................................................................................... 15

*Klumb v. Goan,*
   884 F. Supp. 2d 644 (E.D. Tenn. 2012) ........................................................................ 5

*Konop v. Hawaiian Airlines, Inc.,*
   302 F.3d 868 (9th Cir. 2002) ..................................................................................... 3, 4

*Loucks v. Illinois Institute of Technology,*
   2012 WL 5921147 (N.D. Ill. 2012) .............................................................................. 6

iv

*Love v. United States,*
   915 F.2d 1242 (9th Cir. 1988) ................................................................................ 2

*Luis v. Zang,*
   2013 WL 811816 *6 (Mar. 5, 2013 S.D. Ohio) ........................................................ 5

*Mahru v. Superior Court,*
   191 Cal.App.3d 545 (1987) .................................................................................... 13

*Pacific Telephone & Telegraph Co. v. Superior Court,*
   2 Cal. 3d 161, fn. 8 (1970) .................................................................................... 13

*People v. Lawton,*
   48 Cal.App. 4th Supp. 11 (1996) ........................................................................... 14

*Quon v. Arch Wireless Operating Co., Inc.,*
   529 F.3d 892 (9th Cir. 2008) ................................................................................. 12

*Ribas v. Clark,*
   38 Cal. 3d 355 (Cal. 1985) .................................................................................... 13

*Shefts v. Petrakis,*
   758 F.Supp.2d 620 (C.D. Ill.2010) .......................................................................... 5

*Shulman v. Group W Productions, Inc.,*
   18 Cal. 4th 200 (1998) .................................................................................... 10, 13

*Silva v. Bieluch,*
   351 F.3d 1045 (11th Cir. 2003) ............................................................................. 15

*Skinner v. Switzer,*
   131 S. Ct. 1289 (2011) ............................................................................................ 2

*Starr v. Baca,*
   652 F.3d 1202(9th Cir. 2011) .................................................................................. 2

*State v. Walters,*
   2005 WL 1635143, *4 (N.H. Super. Ct. 2005) ........................................................ 5

*Taus v. Loftus,*
   40 Cal. 4th 683 (2007) .................................................................................... 10, 13

*U.S. v. Finley,*
   477 F.3d 250 (5th Cir. 2007) ................................................................................. 11

*U.S. v. Jones,*
   Fed.Appx. 954 (11th Cir. 2005) 149 ...................................................................... 12

*U.S. v. Maxwell,*
   45 M.J. 406 (C.A.A.F. 1996) ................................................................................. 12

*United States v. Chan,*
   830 F. Supp. 531 (N.D. Cal. 1993) ......................................................................... 11

*United States v. Corinthian Colleges,*
   655 F.3d 984 (9th Cir. 2011) ................................................................................. 15

v

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) .......................................................................... 12

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) .................................................................... 6, 9

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) .................................................................... 5, 6, 7

*United States v. Warshak*,
    631 F.3d 266 (6th Cir. 2010) .......................................................................... 12

*Watkins v. L.M. Berry & Co.*,
    704 F.2d 577, 581 (11th Cir. 1983) .................................................................. 7

**Statutes**

18 U.S.C. § 2511(1)(a) ............................................................................................ 3

18 U.S.C. § 2511(2)(d) ............................................................................................ 7

18 U.S.C. § 2701(a) ................................................................................................. 9

California Invasion of Privacy Act (CIPA) ...................................................... 14, 15

California Penal Code § 502 ............................................................................ 13, 14

California Penal Code § 502 (e)(1) ......................................................................... 13

California Penal Code § 502(a) ............................................................................... 13

California Penal Code § 630 .................................................................................... 14

California Penal Code §§ 502 et seq. ........................................................................ 1

California Penal Code §§ 630 et. seq. ................................................................. 1, 14

Federal Wiretap Act ................................................... 1, 2, 3, 4, 5, 6, 7, 8, 15

Stored Communications Act (SCA) ........................................................ 1, 5, 9, 10

**Rules**

Federal Rule of Civil Procedure 8(a) ........................................................................ 2

Federal Rule of Civil Procedure 8(a)(2) ................................................................... 2

Federal Rule of Civil Procedure 15(a) .................................................................... 15

SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Privacy is a cherished right. The law defines the parameters of privacy, recognizes its importance, and provides remedies for its violation. There can be no debate that once an employee's employment ends, and the employee gives up possession of employer issued technology, the employer's ability to monitor the former employee's private electronic communications ceases. Employers have no legitimate grounds to use technology to invade former employees' privacy to monitor post-employment electronic communications.

Victor's Counterclaim accuses his former employer, Sunbelt, of engaging in this very kind of egregious privacy violations.  While employed by Sunbelt, Victor was given an iPhone and iPad, was required to pay for certain services, and was permitted to use the devices for both work and personal purposes. After Victor resigned, Sunbelt began investigating Victor's post-employment conduct.

As part of its investigation, Sunbelt used Victor's former apple devices to intercept, acquire, and use Victor's post-employment private electronic data and communications with third parties (not Sunbelt) without permission, authority, or consent.[1] Sunbelt knew that Victor's communications were private and were not intended for Sunbelt.  Nonetheless, Sunbelt disregarded Victor's privacy rights to further its investigation.

Sunbelt's conduct violated the Federal Wiretap Act, the Stored Communications Act, California Penal Code §§ 502 et seq., 630 et. seq., and Victor's reasonable expectations of privacy. Victor's counterclaims are not only supported by federal and California law, but provide sufficient factual detail to: (i) notify Sunbelt of the substance of the claims, and (ii) satisfy federal pleading requirements.

Sunbelt's motion to dismiss fails to take the facts as presented in the Counterclaim and misconstrues applicable law. Sunbelt's motion improperly raises factual issues and arguments

---

[1] Because the Apple devices were linked to Mr. Victor's Apple account, and because Sunbelt neither gave Mr. Victor the opportunity to wipe his personal data from the devices, nor did so itself, Sunbelt was able to use these devices to contemporaneously monitor, and record Victor's post-employment communications as Victor sent and received such messages from his post-employment iPhone.

1

1    based on its self-serving interpretation of what it believes the evidence in this case will

2    ultimately show. For example, Sunbelt argues that it bears no liability because it did not

3    **intentionally** intercept Victor's post-employment private electronic data and communications.

4    While Victor contends the opposite, Sunbelt's spin of **how** it obtained Victor's private

5    electronic data and communications, and its argument based thereon raise factual issues that

6    **cannot** be addressed by way of a 12(b)(6) motion.  Sunbelt's motion should therefore be denied.

7    ## II.    **STANDARD OF REVIEW**

8        On a 12(b)(6) motion, the court must accept as true all of the complaint's factual allegations

9    and must construe the facts in the light most favorable to the plaintiff. *Atlantic Corp. v.*

10   *Twombly*, 550 U.S. 544, 555-556 (2007); *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.

11   1988). F.R.C.P. 8(a) only requires a plaintiff to plead each claim with sufficient specificity to

12   "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."

13   *Twombly* , 550 U.S. at 555 (internal quotations omitted). See also *Skinner v. Switzer*, 131 S. Ct.

14   1289, 1291 (2011) (Rule 8(a)(2) requires only short and plain statement of plausible claim, not

15   exposition of legal argument). A complaint will survive a motion to dismiss when it contains

16   sufficient factual matter, that when accepted as true, states a claim to relief that is plausible on

17   its face. *Erickson v. Pardus*, 551 U.S. 89 (2007) ( "[s]pecific facts are not necessary...); *Starr v.*

18   *Baca*, 652 F.3d 1202 (9th Cir. 2011)  (key pleadings tests are (i) fair notice of claim and (ii)

19   allegations sufficiently plausible to warrant discovery).

20   ## III.    **VICTOR ADEQUATELY ALLEGES VIOLATIONS OF THE WIRETAP ACT**

21       Victor sufficiently alleges that Sunbelt's interception and acquisition of Victor's private

22   communications were willful and intentional under the Wiretap Act.  They were not only part of

23   an **intentional post-employment investigation** that, among other things, led to this lawsuit, but

24   were done while knowing that Victor's communications with third parties were private.

25       Moreover, Victor has adequately alleged Sunbelt's use of a device, in the form of an iPhone

26   belonging to Sunbelt, under the Wiretap Act.  This is not a case (as Sunbelt would have the

27   Court believe) where an innocent bystander overheard a conversation meant for another person,

28

1   or where Sunbelt was the intended recipient of the communication. Instead, Sunbelt took

2   deliberate and conscious actions to monitor Victor's private communications.

3         **A. Sunbelt Contemporaneously Intercepted Victor's Private Communications**.

4         The Wiretap Act makes it an offense to "intentionally intercept [] . . . any wire, oral or

5   electronic communication." 18 U.S.C. § 2511(1)(a); *Konop v. Hawaiian Airlines, Inc.*, 302

6   F.3d 868, 876 (9th Cir. 2002). Sunbelt does not dispute that Victor has adequately alleged the

7   existence of electronic communications, but incorrectly takes issue with whether there was

8   intentional interception of a communication.

9         Sunbelt gave Victor an iPhone and iPad while he was working for Sunbelt for which he

10  paid for "services associated with the Apple products, including but not limited to internet

11  access." Counterclaim ¶ 12. The Apple devices were used for both "personal and work

12  purposes." *Id.* ¶ 13. Moreover, Victor "created and paid for a personal 'Apple account' that was

13  linked to both devices." *Id.* ¶ 15. When Victor left Sunbelt, he returned the iPhone and iPad to

14  Sunbelt. *Id.* ¶ 18. He obtained new Apple devices when he began working for Ahern Rentals,

15  which he linked to his Apple account. *Id.* ¶¶ 18-19. Due to this linking, Victor's new devices

16  (and the messages sent and received on the device) were synced with his Apple account through

17  "Apple's internet based server" also known as the "cloud." *Id.* ¶ 19. [2]

18        Thereafter, Sunbelt "began actively investigating Victor's post-employment acts,

19  conduct, and communications." As part of this "post-employment investigation of Victor,

20  Sunbelt improperly invaded Victor's privacy rights by accessing, intercepting, monitoring,

21  reviewing, storing and using Victor's post-employment private electronic data and electronic

22  communications (including but not limited to text messages sent and received from Victor's

23  Ahern Rentals Inc. issued iPhone) without authority, permission, or consent." *Id.* ¶¶ 21-22.

24        Finally, Victor alleges that "Sunbelt improperly used the private information pertaining

25  to Mr. Victor that it obtained." *Id.* 21-22 and 34-40. Accepting these well-pleaded allegations

---

26

27  [2] Victor believes through discovery he will establish that the messages sent to and from the Apple
    devices were linked through his Apple or iTunes account through Apple's iMessage service utilizing

28  Apple's servers. In contrast to ordinary text messages, which are sent through a telecommunications
    provider, such as Verizon or AT&T, the iMessage service utilizes Apple's servers. *See*
    *http://www.apple.com/ios/messages/*

**SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

as true,  it is clear that Victor adequately alleges deliberate and intentional interception of private communications on devices Victor had formerly used for personal communications after he left Sunbelt's employment.  Moreover, the Counterclaim alleges that these actions were a conscious and deliberate part of Sunbelt's active post-employment investigation of Victor that was occasioned by his joining Sunbelt's competitor Ahern, and that has injured Victor.

Sunbelt attempts to evade the plain import of these allegations by implying that its interception of the communications was "inadvertent" or a "mistake" and that no interception occurred.   Motion, p. 4.  Sunbelt's attempts to shift the blame for its conduct by arguing (without any support and contrary to the allegations of the Counterclaim) that it engaged in no "actual conduct" and that it took no "affirmative act" and that, in effect, Victor is responsible for Sunbelt's conduct because of his "negligent" linking of his Apple accounts, *Id.*, pp. 4-5, is contrary to the allegations of the Counterclaim and is factually implausible.

As alleged, Sunbelt actively undertook a post-employment investigation of Victor when he joined Sunbelt's competitor.  Sunbelt did not simply happen upon the communications;  once a message appeared on Victor's former Apple devices Sunbelt took deliberate actions to: (i) read not one but several text messages, (ii) keep the devices charged, (iii) continue to monitor messages over a period of days, and (iv) to save and print the messages.  Sunbelt continued to engage in this activity even though it was readily apparent that the messages were not meant for Sunbelt, but were private communications between Victor and third parties.

Sunbelt misinterprets the legal authority for the Wiretap Act and ignores other authority that shows that reading and using electronic communications intended for a third person does indeed constitute "interception" of the communications.  For example, in *Konop* (which Sunbelt cites), there was no interception of an electronic communication when an authorized user of a **website** accessed ***stored communications*** on the website.  *Konop*, 302 F.3d at 878-79.  Here, the communications accessed were **text messages** that were synced through Apple's servers **and simultaneously appeared** on the Apple devices Sunbelt was monitoring.  The communications were not accessed through, nor stored on a website.

4

Sunbelt's conduct is more akin to the interception of communications that occur through "automatic routing" or "key logging" software, than it is to accessing communications that are on a server or computer, because such software enables its users to simultaneously view information at the same time third parties view it. Where communications, as they were here, are contemporaneously routed and delivered to a third party, courts have also consistently found an "interception" under the Wiretap Act. For example, in *Shefts v. Petrakis*, 758 F.Supp.2d 620 (C.D. Ill.2010)[3], an executive brought suit under the Wiretap Act against individuals who installed software to monitor his text messages. *Id*. at 630. The court found that an interception occurred when the software "acquired and logged Plaintiff's text messages." *Id*. at 630.[4] The court followed *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), a case in which wherein nearly instantaneous delivery of e-mails to two computers that occurred because of a "rule" installed by the defendant on a co-worker's e-mail program was held to be an interception. As the *Szymuszkiewicz* court reasoned, if both the defendant and his co-worker "were sitting at their computers at the same time, they would have received each message with no more than an eyeblink in between. That's contemporaneous by any standard." *Id*. at 706.

Additionally, in *Luis v. Zang*, 2013 WL 811816 *6 (Mar. 5, 2013 S.D. Ohio) the court found that key logging software that simultaneously transmits data (as opposed to allowing the access to the data over the web) involves "immediate (or close to immediate) interception of keystrokes on a computer and transmission to the 'spy's' electronic account" so as to satisfy interception requirement of the Wiretap Act. *See also Klumb v. Goan*, 884 F. Supp. 2d 644 (E.D. Tenn. 2012); and *State v. Walters*, 2005 WL 1635143, *4 (N.H. Super. Ct. 2005).

Cases cited by Sunbelt support the proposition that it "intercepted" the text messages at issue here. *In re Pharmatrak, Inc.* 329 F.3d 9, 22-23(1st Cir. 2003), involved the use of web-monitoring software that "was effectively an automatic routing program . . . that automatically

---

[3] Although Sunbelt cites the 2013 decision in *Shefts v. Petrakis*, 2013 WL 489610 (Feb. 8, 2013 C.D. Ill.) in conjunction with its Stored Communications Act (SCA) argument, it ignores the prior decision in the case dealing with the Wiretap Act.

[4] The court in *Shefts* nonetheless ruled against the plaintiff on a motion for summary judgment on the grounds that there was an issue as to whether he had consented to the logging of his text messages. *Shefts*, 758 F.Supp.2d at 630-31.

**SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

1  duplicated part of the communication between a user and a pharmaceutical client and sent this

2  information to a third party. . . ." The court found that where automatic duplication was alleged

3  to have occurred, the communications were intercepted contemporaneously for purposes of the

4  Wiretap Act. *See also United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (using a

5  "Trojan Horse virus" to access information was not contemporaneous acquisition because the

6  information was not automatically routed to a third party's computer).

7        Victor has sufficiently alleged the interception under the Wiretap Act because the text

8  messages were displayed contemporaneously on Sunbelt's iPhone and on Victor's post-

9  employment device. Sunbelt accessed these text messages contemporaneously with their

10  transmission through a mechanism similar to either key logging program or automatic routing

11  software. As in *Szymuszkiewicz*, that is "contemporaneous [interception] by any standard." 622

12  F.3d at 706.

13        Sunbelt's argument that it took no "affirmative action" and that even negligent

14  interceptions of messages do not constitute a violation of the Wiretap Act is meritless because

15  Sunbelt **was not the intended recipient of the communications**. In *Loucks v. Illinois Institute*

16  *of Technology*, 2012 WL 5921147 (N.D. Ill. 2012), which Sunbelt cites, the defendant (by the

17  plaintiff's own admission) was not aware that it had technology with the ability to log messages.

18  The court therefore found that the defendants did not **intentionally** intercept a communication,

19  and therefore dismissed the claim *Id*. at *2.

20        In contrast, Sunbelt cannot claim ignorance. Sunbelt consciously viewed the messages

21  as part of a post-employment investigation. Sunbelt became well aware of the capability of the

22  Apple device receiving messages sent by Victor when it first viewed the messages. Instead of

23  ignoring the messages, turning off the phone, or informing Victor, Sunbelt continued

24  monitoring messages and, most likely, continued to power up the devices. Sunbelt made use of

25  intercepted messages for which it was not the intended recipient, and did so intentionally.

26        **B. Victor Did Not Consent To Having His Information Accessed.**

27        Sunbelt does not explicitly allege that Victor consented to having his information

28  accessed, but hints by alleging that Victor was negligent in synching his devices to his Apple

6

account.  *See* Motion, p. 5 ("employee's own negligence led to the transmission and reception of said communication").   If Sunbelt is making a consent argument, it is not only incapable of being resolved on a motion to dismiss, but contrary to governing law.

No Wiretap Act violation occurs "where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d).  Courts have found that the party relying on the defense has the burden of proof.  *In re Pharmatrak*, 329 F.3d at 19.  Moreover, there must be actual consent under the Wiretap Act for the defense to be valid and consent "'should not casually be inferred.'"  *Id.*, quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 117-18 (1st Cir. 1990). The "knowledge of the *capability* of monitoring alone cannot be considered implied consent."  *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983).

Given that consent is inherently a factual issue, Victor's alleged negligence or involvement in the syncing of the devices is not only without merit but cannot be addressed in the context of this motion.  Moreover, nothing in the Counterclaim gives rise to any inference that Victor consented to having his private communications monitored by his former employer.

### C.  Sunbelt Made Use Of A Device.

Sunbelt's argument that Victor has not adequately alleged the use of device is defective. On closer examination Sunbelt is not arguing that the iPhone that it utilized to intercept Victor's communications was not a device under the Wiretap Act, but rather that because Sunbelt was in possession of the iPhone, that it was a proper party to the communications between Victor and third parties.  This argument is implausible on its face and contrary to the law.

As the Court noted in *Szymuszkiewicz*, the cases cited by Sunbelt including *Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D.Cal. 2001)  and *Ideal Aerosmith, Inc. v. Accutronic USA, Inc.*, 2007 WL 4394447 (W.D.Pa. 2007), established a "different device" requirement to avoid a rule that made ordinary usage of a telephone or computer criminal. Those courts said that, unless the 'device' must be extraneous to a proper communication, a person answering his own phone at home, and holding a conversation with a friend, would

7

1   violate the Wiretap Act by acquiring the content of his own conversation using his own phone

2   (a 'device').  622 F.3d at 707.

3        Even assuming that there is a "different device" requirement under the Wiretap Act,

4   which is not generally accepted, Sunbelt undoubtedly used such a device under the standard of

5   the cases that it has cited.  In *Crowley*, a customer sued Amazon.com and a verification

6   company for transmitting his personal information in violation of the Wiretap Act.  166 F.Supp.

7   2d at 1265.  This Court granted the motion to dismiss the Wiretap Act claim with leave to

8   amend on the ground that Amazon did not "intercept" the communication by using a device

9   other than that on which the communication was received.  As the Court stated, "Amazon

10  merely received the information transferred to it by Crowley…Amazon acted as no more than

11  the second party to a communication.  This is not an interception as defined by the Wiretap

12  Act."  *Id.*, 166 F.Supp. 2d at 1269.  The Court went on to note that "[h]olding that Amazon, by

13  receiving an e-mail, intercepted a communication within the meaning of the Wiretap Act would

14  be akin to holding that one who picks up a telephone to receive a call has intercepted a

15  communication and must seek safety in an exemption to the Wiretap Act."  *Id.*

16       In *Ideal Aerosmith*, a company accessed communications on a server that it owned and

17  to which it was *a direct party*.  2007 WL 4394447 at *5.  Because the communications were in

18  fact sent to the company, the court ruled that there was no Wiretap Act violation.

19       The facts of this case are far different than *Crowley* or *Ideal Aerosmith*.  Victor alleges

20  he transmitted private communications to third parties, **not Sunbelt**.  Victor alleges that he did

21  not intend those communications to be read by Sunbelt, nor did he intend to direct those

22  communications to Sunbelt.   Sunbelt repeatedly and deliberately accessed communications

23  where it was not the intended recipient.  Sunbelt is far from being someone who inadvertently

24  picks up a telephone, let alone a co-worker glimpsing a private communication on a computer

25  screen.  Sunbelt's iPhone monitored communications between Victor and third parties and was

26  used by Sunbelt to read and printout communications meant for third parties. Sunbelt's iPhone

27  enabled Sunbelt to act as an unnecessary spectator to Victor's communications, and was

28  therefore a "device" within the meaning of the Wiretap Act.

8

## IV.   **VICTOR ADEQUATELY ALLEGES VIOLATIONS OF THE SCA.**

Sunbelt's argument that Victor has not adequately alleged a violation of the Stored Communications Act (SCA) rests almost entirely on a single case, *Garcia v. City of Laredo*, 702 F.3d 788, 793 (5th Cir. 2012). *Garcia*, however, arose not in the context of the acquisition of electronic messages in storage from an "electronic communication service provider," but of the device itself on which the electronic messages were stored.

In *Garcia*, a former dispatcher's telephone was removed from a locker and text messages were accessed and shared from the phone. An investigation ensued and the plaintiff's employment was terminated. 702 F.3d at 790. The court found that the plaintiff did not state a claim under the SCA because she had not alleged that there was intentional access without authorization to a "facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). The court noted, "[c]ourts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services." *Id.* at 792. The court found that Garcia's phone was not a "facility through which an electronic communication service is provided" because it was a device that was "'used to store and maintain electronic storage.'" *Id.*, quoting *Freedom Blanc Mortg. Servs., Inc. v. O'Harra*, 2012 WL 3862209 at *9 (S.D.Ohio).

The *Garcia* court relied upon *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003), in which the court found that a hacker who accessed an individual's computer and obtained information from its hard drive did not violate the SCA because it was not obtaining information from an electronics communication provider. The *Steiger* court nonetheless found that "'the SCA may apply to the extent the source accessed and retrieved any information *stored with Steiger's Internet service provider*.'" (Emphasis added.)

The facts of this case are similar to those posited by the *Steiger* court. As an alternative claim, Victor alleges Sunbelt violated the SCA by "intentionally accessing Victor's private electronic communications and data, without authorization, from Victor's cellular phone provider's network **and or Apple's cloud based network, where Victor's electronic communications pertaining to his Apple Account are processed and stored)** and where such

9

1    services and communications were restricted to access by Victor which Sunbelt obtained

2    through improper means."  Counterclaim ¶ 23, 45 (emphasis added).

3         Through discovery, Victor will seek to show that the text messages that Sunbelt

4    accessed were stored in Apple's servers through its iMessage service and that Sunbelt gained

5    access to these messages through Victor's linkage to his Apple account.  Sunbelt did not seize a

6    device that stored information, such as telephone or computer, but rather used a device that to

7    access information stored on the servers of an electronic communications provider, *i.e.*, Apple.[5]

8    Sunbelt's motion to dismiss Victor's SCA claim should therefore be denied.

9    **V.    THE COUNTERCLAIM STATES A CLAIM FOR INVASION OF PRIVACY**

10        To plead a claim for invasion of privacy Victor need only establish facts sufficient to put

11   Sunbelt on notice that Sunbelt (i) intentionally intruded upon or obtained unwanted access to

12   Victor's electronic data (ii) in a manner highly offensive to a reasonable person. *Shulman v.*

13   *Group W Productions, Inc.*, 18 Cal. 4th 200, 231 (1998); *Taus v. Loftus*, 40 Cal. 4th 683, 724

14   (2007). Victor has sufficiently plead a claim for invasion of privacy.

15        Victor alleged that: (i) Sunbelt's custom and practice in allowing employees and Victor to

16   use their iPhones and iPads for both work and personal purposes gave Victor a reasonable

17   expectation of privacy in the use of such electronic devices while working for Sunbelt.

18   Counterclaim ¶ 14.; (ii) After being dismissed by Sunbelt Victor returned the iPhone and iPad

19   to Sunbelt. *Id.* ¶18.; (iii) Victor was without a cell phone or iPad until his new employer gave

20   him new devices. *Id.* ¶ 18.; (iv) Victor had and has a reasonable expectation of privacy that his

21   electronic communications and data would not be intercepted, reviewed, or otherwise used by

22   his former employer, Sunbelt. *Id.* ¶¶ 65, 75-76.; (v) Sunbelt intentionally invaded Victor's

23   reasonable expectations of privacy by accessing, intercepting, monitoring, reviewing, storing,

24   recording, and using Victor's post-employment private electronic data and electronic

25   _____

26   [5] This Court's decision in *In re iPhone Application Litig*, 844 F.Supp.2d 1040, 1057-58 (N.D.Cal. 2012)
     is not to the contrary.  In the *iPhone* case, the plaintiffs alleged that Apple violated the SCA by

27   intentionally accessing and collecting information stored on phones.  In holding that an iPhone was not a
     "facility through which an electronic communication service is provided," the Court found that this

28   interpretation would make "any app downloaded by a Plaintiff . . . a 'user' of that service for whom the
     iPhone's communications are intended."  In contrast, the facility here **is not the Apple device itself**, but
     Apple's electronic communications network which was accessed using Sunbelt's iPhone.

                                                    10
─────────────────────────────────────────────────────────
**SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

1   communications without Victor's knowledge, authorization or consent as part of an

2   unreasonably intrusive and unauthorized investigation into Victor's post-employment conduct.

3   *Id.* ¶ 77.; (vi) Sunbelt's intrusions would be highly offensive to a reasonable person in that no

4   reasonable person would find it acceptable or otherwise reasonable for a former employer to

5   intercept, monitor, review, store and use a former employee's post-employment private

6   electronic data and electronic communications as part of a post-employment investigation into

7   the former employee's post-employment conduct without a court order, or the employee's

8   knowledge, authorization or consent. *Id.* ¶ 79.; and (vii) Sunbelt's improper conduct caused

9   injury to Victor. *Id.* ¶¶81-82.

10   **A. Victor has Reasonable Expectation of Privacy in his Post-Employment**

11   **Private Electronic Communications and Data**

12   The Supreme Court has held that even government employees have reasonable

13   expectations of privacy in text messages sent from employer-owned electronic devices over an

14   outside service provider's network. *City of Ontario, Calif. v. Quon*, 130 S.Ct. 2619, 2630

15   (2010); see also *U.S. v. Finley*, 477 F.3d 250 (5th Cir. 2007) (Employee had a reasonable

16   expectation of privacy in the call records and text messages on his employer provided cell

17   phone; *United States v. Chan*, 830 F. Supp. 531, 534 (N.D. Cal. 1993) (finding that the

18   defendant had standing to contest the search of a pager's contents because he "maintained a

19   subjective expectation that ... [it] would be free from governmental invasion" and that

20   expectation was objectively reasonable).

21   This case presents facts even more extreme than those faced by the Courts in *Quon,*

22   *Finley, or Chan.* Those courts found that employees maintained a reasonable expectation of

23   privacy in text messages sent and received from employer provided devices. Here however, the

24   electronic communications at issue were neither sent nor received by Victor on Sunbelt issued

25   devices. Instead, the communications were sent and received by Victor **after he was no longer**

26   **employed by Sunbelt, on a device Sunbelt neither owned nor issued.**

27   Moreover, the electronic communications and data that Sunbelt intercepted, monitored,

28   stored, and reviewed **were not sent to Sunbelt, nor intended to be sent to Sunbelt.** Sunbelt

11

1    was not an intended recipient. As such, Sunbelt's citations to *U.S. v. Maxwell,* 45 M.J. 406

2    (C.A.A.F. 1996) and *U.S. v. Jones,* Fed.Appx. 954 (11th Cir. 2005) 149 are inapplicable.

3    Sunbelt cites to *Maxwell* and *Jones* for the unremarkable proposition that  when person A sends

4    a letter or email to person B, once person B receives the letter, person A's expectation of

5    privacy is diminished **because person B could presumably show the letter or email to any**

6    **third party**. This underlying rationale is simply inapplicable here for two distinct reasons.

7           First, Sunbelt was not an intended recipient of Victor's electronic communications and

8    did not have consent to review the messages.  Therefore Sunbelt's argument that Victor did not

9    have a reasonable expectation of privacy under the circumstances is simply wrong. In *Quon v.*

10   *Arch Wireless Operating Co., Inc.,* 529 F.3d 892, 906 (9th Cir. 2008) rev'd on other grounds in

11   *City of Ontario, Cal. v. Quon,* supra, 560 U.S. 746, 130 S. Ct. 2619, the court stated:

12          "[T]he maker of a telephone call has a reasonable expectation that police…will

13          not intercept…the conversation … Had Jeff Quon voluntarily permitted the

14          Department to review his text messages, the remaining Appellants would have no

15          claims. Nevertheless, the OPD surreptitiously reviewed messages that all parties

16          reasonably believed were free from third-party review. As a matter of law,

17          [Appellants] had a reasonable expectation that the Department would not review

18          their messages absent consent from either a sender or recipient of the messages."

19          Second, Victor is attacking Sunbelt's interception, review, and use **of the contents** of his

20   private electronic communications.  Courts have consistently held that people have reasonable

21   expectations of privacy in the contents of private communications. See e.g., *United States v.*

22   *Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) ("a subscriber enjoys a reasonable expectation of

23   privacy in the contents of emails…"; see also *United States v. Forrester*, 512 F.3d 500, 510-

24   511(9th Cir. 2008) .

25          Based on the law set forth above, and facts alleged in Victor's counterclaims, Victor has

26   sufficiently plead that he had a reasonable expectation of privacy that his electronic

27   communications and data would not be intercepted, reviewed, or otherwise used by Sunbelt.

28   **B.  Sunbelt's Intrusion Would Be Highly Offensive to a Reasonable Person**

12

1    Victor alleged that Sunbelt's conduct intentionally invaded Victor's reasonable expectations

2    of privacy. Counterclaim ¶ 77, and that Sunbelt's intrusions would be highly offensive to a

3    reasonable person. *Id.* ¶ 79.

4    The allegations are sufficiently plead and supported by case law. See *Taus v. Loftus*, 40 Cal.

5    4th 683, 751 (2007)  citing *Shulman*, supra, 18 Cal.4th at p. 233 and *Pacific Telephone &*

6    *Telegraph Co. v. Superior Court*, 2 Cal. 3d 161, 168, fn. 8 (1970)  ("Wiretapping or

7    surreptitious recording of [communications] violates the rights of those wiretapped or recorded,

8    because such intrusions violate well-defined expectations of privacy"); *Ribas v. Clark*, 38 Cal.

9    3d 355, 361 (Cal. 1985) ("[S]ecret monitoring denies the speaker an important aspect of privacy

10    of communication — the right to control the nature and extent of the firsthand dissemination of

11    his statements.").

12    Sunbelt's position that its conduct would not be offensive to a reasonable person is an issue

13    of fact that cannot be evaluated at this pleading stage. Unlike the city in *City of Ontario, Cal. v.*

14    *Quon*, supra, 560 U.S. 746, Sunbelt's conduct was not motivated by legitimate work related

15    purposes. Sunbelt infringed upon Victor's privacy rights at a time when he was **no longer**

16    **employed by Sunbelt**.  Sunbelt's motion should therefore be denied.

17    **VI.    VICTOR SUFFICIENTLY ALLEGES VIOLATIONS OF PENAL CODE § 502**

18    Section 502 of the California Penal Code expanded the protection afforded to individuals

19    from unauthorized access to both their personal computers and individual data. Cal. Penal Code

20    § 502(a). Pursuant to Section 502 (e)(1), any person who suffers "damage or loss by reason of a

21    violation of any of the provisions of subdivision (c)..." may bring a civil action against the

22    violator. Victor has asserted claims pursuant to § 502 based on allegations that Sunbelt

23    intentionally accessed Victor's electronic data and communications "without permission."

24    Sunbelt's argument that this section is only intended to apply to situations involving hacking

25    is misplaced. See *Mahru v. Superior Court,* 191 Cal.App.3d 545, 549 (1987) (describing

26    legislative declaration regarding the need to deter "unauthorized intrusions into computer

27    systems" as not conclusive of a "legislative intent to deter and punish only browsers and

28    hackers"; concluding instead that the court "cannot be confident... that this brief declaration of

13

1  purpose was intended to summarize every act covered[.]").

2     Moreover, even if Sunbelt had authority to use its own iPhone, **using its iPhone to**

3  **improperly access Victor's post-employment private electronic data** indeed violates § 502.

4  See *People v. Lawton*, 48 Cal.App. 4th Supp. 11, 14 (1996) ("permissible use of hardware to

5  access impermissible [information] is a violation of [section 502]." ; see also *Facebook, Inc. v.*

6  *ConnectU LLC*, 489 F.Supp.2d 1087, 1091 (N.D.Cal.2007)  (Where plaintiff alleged defendant

7  knowingly accessed its website to collect, copy, and use data found thereon in **a manner not**

8  **authorized or permitted by Plaintiff**, Court denied defendant's motion to dismiss.)

9     Sunbelt violated § 502 when it improperly began accessing, intercepting, monitoring and

10  reviewing electronic devices to gain access to Victor's post-employment private electronic data

11  and electronic communications without Victor's knowledge or consent. Counterclaim ¶ 56-57.

12  Victor has also alleged that once Sunbelt acquired Victor's post-employment private electronic

13  data from such electronic devices, Sunbelt improperly used such ill-gotten information to

14  further its improper investigation into Victor's post-employment conduct. *Id.* ¶ 56-57.

15     Victor has stated a § 502 claim and Sunbelt's motion must be denied. See *Craigslist, Inc. v.*

16  *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1058 (N.D. Cal. 2010) (Plaintiff stated a claim under

17  § 502 by alleging that defendants knowingly accessed Plaintiff's data through computers and a

18  computer system without authorization, and copied and made use of plaintiff's data.)

19  **VII.   VICTOR SUFFICIENTLY PLEAD VIOLATIONS OF PENAL CODE § 630 et seq.**

20     The California legislature wrote California's Invasion of Privacy Act (CIPA) broadly to

21  "protect the right of privacy" from "advances in science and technology ... and the development

22  of new devices and techniques...." Cal. Penal Code § 630. CIPA must be interpreted with this

23  purpose in mind. CIPA prohibits "any unauthorized connection" or any attempt to read or learn

24  the contents of any communication by means of "any machine, instrument or convenience, or in

25  any other manner." Victor alleged that Sunbelt used technology to intercept, monitor, review,

26  store and use Victor's post-employment private electronic data and electronic communications

27  without his authority or consent. These allegations provide fair notice of this claim.

28     Sunbelt's arguments that Victor has not stated a claim under CIPA because Sunbelt's

14

1  conduct was not intentional and that Sunbelt did not use a "device" to obtain Victor's post-

2  employment electronic data and communications is as unpersuasive here as it is with regard to

3  the Wiretap Act, and therefore fails for the same reasons (see section III above).

4      The CIPA claim is supported by California law.  See *Coulter v. Bank of America Nat'l Trust*

5  *& Sav. Ass'n*, 28 Cal.App.4th 923, 929–930 (1994) (employees' conversations with supervisors

6  and coworkers, which employee surreptitiously recorded were "confidential" under CIPA and

7  improperly recorded without consent in violation of CIPA); *Kight v. CashCall, Inc.*, 200

8  CalApp.4th 1377, 1393–1394 (2011) (liability under CIPA found where private

9  communications between third parties were secretly monitored)).  Sunbelt's motion must be

10  denied.

11  **VIII.    IF THE MOTION IS GRANTED VICTOR REQUESTS LEAVE TO AMEND**

12      If the Court grants Sunbelt's motion as to any cause of action alleged in Victor's

13  Counterclaim, Victor requests leave to amend. F.R.C.P. 15(a) expressly states leave to amend

14  shall be freely given when justice so requires. F.R.C.P. 15(a); *United States v. Corinthian*

15  *Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). F.R.C.P. 15(a) severely restricts the court's

16  discretion to dismiss without leave to amend. Where a more carefully drafted complaint might

17  state a claim, a plaintiff must be given at least one more chance to amend the complaint before

18  the district court dismisses the action with prejudice. *Silva v. Bieluch*, 351 F.3d 1045, 1048

19  (11th Cir. 2003).  Victor is confident that discovery will unveil additional facts to support his

20  claims. If the Court believes further facts must be alleged, Victor requests leave to do so.

21  **IX.    CONCLUSION**

22      Victor respectfully requests this Court to deny Sunbelt's motion.

23  Date: December 6, 2013                    MORRIS POLICH & PURDY LLP

24                                             Beth A. Kahn
                                               Timothy J. Toohey
25                                             Kevin M. Pollack

26

27                                          By: _____
                                               Kevin M. Pollack
28                                             Attorneys for Defendant Santiago Victor

**SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

# CERTIFICATE OF SERVICE

*Sunbelt Rentals, Inc. v. Santiago Victor*
USDC, Northern District of California, Case No. C 13-4240 SBA

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action.

On December 6, 2013, pursuant to the Court's Electronic Filing System, I submitted an electronic version of the following document(s) via file transfer protocol to ECF (Electronic Case Filing)

**DEFENDANT AND CROSS-CLAIMANT SANTIAGO VICTOR'S OPPOSITION TO SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS; [PROPOSED] ORDER DENYING SUNBELT'S MOTION TO DISMISS COUNTERCLAIMS**

and true copies of these documents were served electronically upon all counsel of record by the Court's CM/ECF System, or if such service is not authorized, by first class mail, in accordance with Rule 5 of the Federal Rules of Civil Procedure.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 6, 2013, at Los Angeles, California.


*/s/ Marie B. de Veyra*
**Marie B. de Veyra**

L0459351.DOC