UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUNBELT RENTALS, INC., | Case No: C 13-4240 SBA |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| SANTIAGO VICTOR, | Docket 15 |
| Defendant. | |

Sunbelt Rentals, Inc. ("Sunbelt"), an industrial equipment rental company, filed the instant diversity jurisdiction action against former employee Santiago Victor ("Victor") accusing him of misappropriating its trade secrets, including customer lists and customer pricing information. The parties are presently before the Court on Sunbelt's motion for preliminary injunction. In particular, Sunbelt seeks to enjoin Victor, who now is employed by competitor Ahern Rentals, Inc. ("Ahern"), from soliciting Sunbelt employees for employment and from using Sunbelt's confidential information to solicit Sunbelt's customers. Dkt. 3, 15. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

# I.    BACKGROUND

## A.    EMPLOYMENT WITH SUNBELT

On December 3, 2003, Victor was hired by NationRents as a Yardman.  Victor Decl. ¶ 4, Dkt. 24-2.  In 2005, NationsRent was acquired by Sunbelt, which operates "profit centers" (i.e., rental centers) throughout California.  Id. ¶ 4; Compl. ¶ 12, Dkt. 1.  On June 27, 2007, Sunbelt promoted Victor to Outside Sales Representative Trainee.  Elbrecht Decl. ¶ 8, Dkt. 8.

After Victor completed his training, Sunbelt promoted him to an Outside Sales Representative at its rental center in Richmond, California, on January 8, 2008.  Id. ¶ 9.  In connection with his promotion, Victor executed an Employment Agreement ("Agreement"), which contained several restrictive covenants, including a non-disclosure provision.  Id. ¶¶ 27, 29 and Ex. A.  In the Agreement, Victor acknowledged that he would have access to "valuable, highly confidential, privileged and proprietary information relating to [Sunbelt]'s Business, including, without limitation, . . . customer lists, identities of distributors and distributorships, [and] sales methods," and agreed not to disclose such information to third parties without prior authorization both during his employment and for a period of up to twelve months following the termination of the Agreement.  Id. Ex. A §§ 5, 5.1.

The Agreement also restricts Victor's ability to solicit Sunbelt employees and customers following his termination, as follows:

> During the term of his Agreement and for a period of one (1) year the date of expiration or formation of this Agreement for any reason . . .   Employee shall not directly or indirectly:
>
> (i)  solicit the employment of, [sic] any person who at any time during the twelve (12) calendar months immediately preceding the termination or expiration of this Agreement was employed by [Sunbelt];
>
> (ii)  interfere or attempt to interfere with the terms or performance of any contract between [Sunbelt] and any person or entity from whom [Sunbelt] has purchased equipment, supplies, inventory or services at any time within the "Territory," . . . during the twelve (12) calendar months immediately preceding the termination or expiration of this Agreement;

(iii)  solicit the provision of products or services, similar to those provided by [Sunbelt] at the "Designated Stores" . . . to any person or entity who purchased or leased products or services from [Sunbelt] at any time during the twelve (12) calendar months immediately preceding the termination of this Agreement for any reason and for or with whom Employee had contact, responsibility, or access to Confidential Information related to such person or entity . . .

Id. § 5.2.  The Agreement further provides that in the event of a breach or threatened breach, Sunbelt is entitled to injunctive and compensatory relief.  Id. § 5.3.1.

On August 19, 2013, Victor submitted his two weeks' notice of intent to resign, which was prompted by Sunbelt's decision to significantly reduce his sales territory.  Victor Decl. ¶ 6.  Upon receipt of such notice, Sunbelt advised Victor that his services were no longer needed and terminated him immediately.  Id. ¶ 7.  Victor surrendered his company-issued iPhone and iPad.  Id. ¶ 9.  Shortly thereafter, he commenced working for Ahern, a Sunbelt competitor, which provided him with a new iPhone and iPad.  Id.  Sunbelt claims that Victor "mirrored" his iPhone with his personal phone, though it does not specify the basis of that accusation.  Elbrecht Decl. ¶ 21.  Victor denies copying Sunbelt's proprietary information.  Victor Decl. ¶ 9.

## B.   ALLEGED MISCONDUCT

Sunbelt alleges that, in violation of the Agreement and the California Uniform Trade Secrets Act ("UTSA"), Cal. Civ. Code § 3426, Victor misappropriated its confidential information and has attempted to solicit its employees and customers in violation of the UTSA and the Agreement.  Victor denies having engaged in such conduct.  Below is a summary of the allegations and evidence offered in support of Sunbelt's claims.

### 1.   Alleged Solicitation of Employees

#### a)   *Ruben Martinez*

On August 21, 2013, Victor sent a text message to Ruben Martinez ("Martinez"), his best friend and a current Sunbelt employee, inquiring whether Shawn O'Connell ("O'Connell") could contact him (Martinez).  Victor Decl. ¶ 27.  O'Connell currently is an

Ahern sales manager who previously worked with Martinez at Sunbelt.  Id.  Victor Decl. ¶ 27.  On information and belief, Sunbelt alleges that Victor contacted Martinez in an attempt to solicit him for employment with Ahern or to obtain information from him for the purpose of soliciting Ahern customers.  Id.

Victor denies any illicit motive in contacting Martinez.  Victor Decl. ¶ 31.  Rather, Victor states that he, O'Connell and Martinez previously worked together at Sunbelt, and that O'Connell simply had asked Victor to put him in touch with Martinez.  Id.  Before giving Martinez's contact information to O'Connell, Victor asked Martinez whether it would be okay for him to do so.  Id.  Victor denies having set up a meeting between O'Connell and Martinez or attempting to recruit Martinez to join Ahern.  Id.

### b)   *Deuel Gomez and Robert Porteous*

Deuel Gomez ("Gomez") is employed by Sunbelt as an Outside Sales Representative at its Richmond facility.  Elbrecht Decl. ¶ 28.  On August 21, 2013, Victor sent a text to Gomez seeking the contact information for Robert Porteous ("Porteous"), another Outside Sales Representative at Sunbelt's Richmond rental center.  Id. Ex. G.  On information and belief, Sunbelt alleges that Victor sought to contact Porteous in order to solicit his employment or to obtain confidential information from him in order to underbid and deprive Sunbelt of business.  Id. ¶ 32.  Victor admits that he contacted Porteous and Gomez, but only to maintain the relationships he had formed with them at Sunbelt.  Id.  Victor specifically denies soliciting them or any other Sunbelt employees to join Ahern or to disclose Sunbelt's confidential information.  Id.

### c)   *Sam Dep*

On August 22, 2013, Victor again contacted Martinez via text, requesting the contact information for Sam Dep ("Dep"), an Outside Sales Representative at Sunbelt's Livermore rental center.  Id. ¶ 31 and Ex. H.  On information and belief, Sunbelt alleges that Victor sought to contact Dep in order to solicit his employment or to obtain confidential information from him in order to underbid and deprive Sunbelt of business.  Id. ¶ 32.

Victor acknowledges having contacted Dep, albeit for personal reasons, and not to solicit him to join Ahern or to disclose Sunbelt's confidential information.  Victor Decl. ¶ 32.

### 2.     Alleged Solicitation of Customers

#### a)     *Pankow Special Products*

Prior to tendering his two-week notice August 19, 2013, Plaintiff emailed to his personal email account confidential pricing information regarding Pankow Special Products ("Pankow"), a Sunbelt customer.  Id. ¶ 24 and Ex. E.  On information and belief, Sunbelt avers that Victor intended to use this information to solicit Pankow by underbidding Sunbelt's prices.  Id. ¶ 25.

Victor states that he emailed this information to himself in anticipation of a then upcoming client meeting with Pankow.  Victor Decl. ¶ 21.  At the time he sent this information, Victor was planning on working for an additional two weeks after giving notice of his intent to resign, and had scheduled the meeting with Pankow during that time period.  Id.  Victor states that he was unaware that Sunbelt would dismiss him immediately upon giving notice.  Id.  He further denies contacting Pankow or utilizing any confidential information regarding Pankow since commencing employment with Ahern.  Id.

#### b)     *Bar A Construction*

On August 22, 2013, Victor sent Martinez a text message suggesting that they meet for lunch.  Elbrecht Decl. Ex. H.  Sunbelt claims that "during a text message conversation approximately two (2) hours later, Victor received confidential information about a current Sunbelt customer, Bar A Construction ("Bar A"), in exchange for an undisclosed 'favor.'"  Id. ¶ 33.  The actual text, however, stated as follows:

> I need a favor
> [BAC]
> Rates 8k reach, 45' stick
> Boom, 26' & 32' RT
> Scissors
> Their [sic] out of Washington

Id. Ex. I.  To the extent that the text message is construed as a request for information, it is unclear whether it was Victor or Martinez requesting the information.  For his part, Victor

denies asking Martinez about Bar A and indicates that it was Martinez who was requesting the information.  Victor Decl. ¶ 28.  In any event, there is no evidence that Victor contacted or solicited Bar A while working for Ahern.

### c)   *Atlas Painting*

On August 22, 2013, Victor sent a text message to Keith Hopkins ("Hopkins") of Atlas Painting ("Atlas"), a Sunbelt customer which Victor handled while he was employed by Sunbelt.  Id. ¶ 35.  In the text, Victor expressed his desire to do business with Atlas and indicated that he would send "pricing in the morning."  Id. Ex. J.  On information and belief, Sunbelt alleges that Victor intended to use confidential information to underbid Sunbelt's pricing.  Id. ¶ 25.  Victor discloses that he did in fact reach out to Hopkins, with whom he had previously developed a professional relationship, but denies using any of Sunbelt's confidential information in doing so.  Victor Decl. ¶ 23.

### d)   *Siteworks Construction and Leftco*

On August 23, 2013, Victor sent a text message to Gomez requesting the contact information for Joe Regoli ("Regoli") of Siteworks Construction and Carlos Arviso ("Arviso") of Leftco, both of which were Sunbelt customers.  Elbrecht Decl. ¶ 37 and Ex. K.  On information and belief, Sunbelt alleges that Victor requested this information in order to underbid Sunbelt.  Id. ¶ 38.  Gomez provided a telephone number for Regoli, but not Arviso.  Id. Ex. K.

As to Regoli, Victor indicates that he had a prior relationship with him.  Victor Decl. ¶ 29.  Although Victor states that he easily could have found Regoli's name in a telephone directory, he decided it was easier to ask Gomez, since they were mutual friends.  Id.  As for Arviso, Victor claims he simply wanted to see how he was feeling after his surgery.  Id. ¶ 30.

### e)   *McNabb Construction*

On August 26, 2013, Victor sent a text message to McNabb Construction ("McNabb"), a customer that he serviced while employed by Sunbelt.  Id. ¶ 39 and Ex. L.  His text message stated:  "I'm Santiago Victor, previously worked with Sunbelt Rentals.  I

now work with Ahern Rents, I look forward [to] an opportunity to meet to offer you Ahern Services.  Please contact me if you have question[s].  Best Regards[.]"  Id. Ex. K.  On information and belief, Sunbelt claims that Victor acquired and used its confidential information to solicit McNabb's business.  Id. ¶ 40.  Victor confirms that he sought out McNabb's representatives with whom he had previously developed a professional relationship while at Sunbelt.  Victor Decl. ¶ 24.  He denies, however, having used any of Sunbelt's proprietary information to solicit McNabb's business.  Id.

### 3.  Confidential Information

Sunbelt cites two instances of Victor having emailed confidential information to his personal email account.

#### a)  *February 21, 2013*

On February 21, 2013, almost six months prior to his resignation, Victor emailed himself confidential pricing information regarding Allied Fire Protection ("Allied").  Elbrecht Decl. ¶ 16 and Ex. C.  On information and belief, Sunbelt avers that Victor did so in order to underbid Sunbelt's pricing.  Id.

Victor denies any wrongdoing with respect to Allied.  Victor states it was his custom and practice to email customer information to his personal email account in order to prepare for sales calls.  Victor Decl. ¶ 18.  The reason for this practice was that he lived a significant distance from his Sunbelt office and that it was difficult to obtain this information directly from Sunbelt through his home computer; thus, emailing the information to his personal account allowed him to print out the information—which was not possible with his iPad.  Id.  Although this information was accessible through his Apple devices, he could not print from them.  Id.  Since leaving Sunbelt, Victor has had no contact with Allied.  Id.

#### b)  *August 16, 2013*

On August 16, 2013, the day of his resignation, Victor emailed a sale commission summary to his personal email account which purports to show the amount of his sales commission rate, sales volume, customer discount percentage and total commissions for

sales in his territory.  Elbrecht Decl. ¶ 18 and Ex. D.  On information and belief, Sunbelt alleges that Victor sought to use this information to solicit Sunbelt employees or to underbid and deprive Sunbelt of business.  Id. ¶ 19.  Victor states that he emailed himself this information only to ensure that he was properly paid his accrued commissions by Sunbelt.  Victor Decl. ¶ 20.

### C.    PROCEDURAL HISTORY

On September 12, 2013, Sunbelt filed the instant action against Victor in this Court. Dkt. 1.  The Complaint alleges four state law causes of action for:  (1) breach of contract; (2) misappropriation of trade secrets; (3) unfair competition; and (4) breach of duty of loyalty.  Along with the Complaint, Sunbelt filed Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("Ex Parte Application").  Dkt. 3.

On September 13, 2013, the Court denied the Ex Parte Application based on Sunbelt's failure to demonstrate that a temporary restraining order without notice to Victor was appropriate under the circumstances presented.  Thereafter, Sunbelt renewed its Ex Parte Application with notice thereof to Victor.  Dkt. 16.  The Court construed the renewed Ex Parte Application as a motion for preliminary injunction and set a briefing schedule thereon.  Dkt. 17.  Victor and Sunbelt timely filed their opposition and reply briefs, respectively.  The matter is fully briefed and is ripe for adjudication.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citation omitted).  The moving party bears the burden of meeting all prongs of the Winter

1   test.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).  The

2   decision of whether to grant or deny a preliminary injunction is matter of the district court's

3   discretion.  See Grand Canyon Skywalk Devel., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196,

4   1200 n.1 (9th Cir. 2013).

5   **III.**   **DISCUSSION**

6       **A.**   **LIKELIHOOD OF SUCCESS**

7           **1.**   **Misappropriation of Trade Secrets Claim**

8           Sunbelt alleges that Victor misappropriated its proprietary and confidential

9   information in violation of the UTSA.  Compl. ¶¶ 62-69.  "Under the UTSA, a prima facie

10  claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the

11  plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's

12  trade secret through improper means, and (3) the defendant's actions damaged the

13  plaintiff."  CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc., 160 Cal.App.4th

14  288, 297 (2008) (internal quotations and citation omitted).

15          *a)*   *Possession of Trade Secrets*

16          The threshold issue presented is whether the information that Victor allegedly

17  misappropriated—namely, Sunbelt's customer lists and pricing information—constitute

18  protectable trade secrets.  The UTSA defines a "trade secret" as information, including a

19  formula, pattern, compilation, program, device, method, technique, or process, that:

20  "(1) Derives independent economic value, actual or potential, from not being generally

21  known to the public or to other persons who can obtain economic value from its disclosure

22  or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to

23  maintain its secrecy."  Cal. Civ. Code § 3426.1(d).  "[A] plaintiff who seeks relief for

24  misappropriation of trade secrets must identify the trade secrets and carry the burden of

25  showing that they exist."  MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 522 (9th Cir.

26  1993).

27          Sunbelt appears to use the term "customer lists" generically to include the identity of

28  the customer, the name of the customer's decision-maker and customer-specific

- 9 -

information, such as its equipment needs, order history and equipment pricing.  Compl. ¶ 14; Supp. Elbrecht Decl. ¶ 10.[1]  Courts have found this type of information worthy of trade secret protection.  See Courtesy Temporary Serv., Inc. v. Camacho, 222 Cal.App.3d 1278, 1289-90 (1990).  Nonetheless, determining whether a particular customer list is protectable under the UTSA is fact-specific.  To that end, the plaintiff must show that the information it seeks to protect "is the product of a substantial amount of time, expense and effort on the part of the employer, has commercial value, and is not readily ascertainable to other competitors[.]"  Kovesdy v. Kovesdy, No. C 10-2012 SBA, 2010 WL 3619826, *6 (N.D. Cal. Sept. 13, 2010) (citing Camacho, 222 Cal.App.3d at 1287-88) (internal quotations omitted); Morlife, Inc. v. Perry, 56 Cal.App.4th 1514, 1521 (1997) ("As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret.").

In the instant case, Sunbelt has failed to carry its burden of demonstrating that its customer lists are trade secret.  The declaration submitted by Sunbelt in support of its motion for preliminary injunction merely states, in an entirely conclusory manner, that Sunbelt has "invested substantial time, effort and expense to cultivate prospective and continuing relationships with its customers in the area within a 50-mile radius of [the Richmond rental center] and to develop customer goodwill by providing construction, industrial, and manufacturing equipment based on the particular needs of each customer at competitive prices."  Elbrecht Decl. ¶¶13- 14.  No facts are presented which specify the nature of the time, effort and expense that Sunbelt has purportedly expended to collect its customer information or to show that the information is neither generally known nor readily ascertainable.  In the absence of such a showing, the Court is not persuaded, at least for purposes of the instant motion, that Sunbelt's customer lists are entitled to protection under the UTSA.  E.g., Kovesdy, 2010 WL 3619826, *6 (denying motion for preliminary

---

[1] It is unclear how this information is stored; e.g., on actual "lists" or some other format.

1   injunction where the plaintiff failed to establish that the customer list and data were

2   compiled through a substantial amount of time, expense and effort); Abba Rubber Co. v.

3   Seaquist, 235 Cal.App.3d 1, 20 (1991) (upholding trial court finding that customer list was

4   entitled to trade secret protection where "substantial evidence indicates that this

5   information was not known").

6        The Court reaches a different conclusion with respect to Sunbelt customer "pricing

7   information."  Victor argues that the rates that Sunbelt charges for its equipment are readily

8   ascertainable from Sunbelt's website and are generally known within the industry.  Opp'n

9   to Mot. for Prelim Inj. ("Opp'n") at 9.  However, Sunbelt has offered evidence that it

10  discounts its regular rates (which are disclosed on its website) depending on the particular

11  customer, and that the amount of the discount is ultimately decided by the rental center

12  manager.  E.g., Elbrecht Decl. ¶¶ 16, 18, 24; Supp. Elbrecht Decl. ¶ 9, Dkt. 29.  In addition,

13  Sunbelt has shown that it limits the dissemination of its pricing information to only certain

14  employees.  Elbrecht Decl. Ex. A § 5.  Sunbelt's customer-specific pricing has independent

15  economic value to competitors, and thus, appears to qualify for trade secret protection.  See

16  Whyte v. Schlage Lock Co., 101 Cal.App.4th 1443, 1455-56 (2002) (holding that prices

17  charged to different customers constituted a trade secret).  The Court now turns to the issue

18  of whether Sunbelt has made a compelling showing of misappropriation.

19                              *b)        Misappropriation*

20       The second element of a claim under the UTSA requires a showing of

21  misappropriation, which is the unauthorized disclosure or use of trade secrets.  See Cal.

22  Civ. Code § 3426.1(b).  Sunbelt posits three arguments regarding this element.[2]  First,

23  Sunbelt claims that Victor copied confidential information previously stored on his iPhone

24  and iPad issued to him by Sunbelt.  Mot. for Prelim. Inj. ("Mot.") at 8.  The only supporting

25  evidence identified by Sunbelt is a conclusory statement to that effect made on

26

27          [2] Although Sunbelt has failed to demonstrate that its customer lists are entitled to
    trade secret protection, the Court will presume, for purposes of its misappropriation
28  analysis, such lists qualify for protection under the UTSA.

"information and belief" by Brian Elbrecht ("Elbrecht"), a Sunbelt District Manager whose responsibility includes the Richmond rental center.  Elbrecht Decl. ¶¶ 5, 12.  However, Elbrecht offers no facts upon which his belief is predicated, which undermines the evidentiary value of his otherwise conclusory and speculative assertion.  See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (declaration based on information and belief was insufficient because there were no facts to establish personal knowledge).[3] The mere fact that Victor had access to Sunbelt's confidential information prior to his separation does not ipso facto establish that he later misappropriated such information.  See Central Valley Gen. Hosp. v. Smith, 162 Cal.App.4th 501, 528-29 (2008) (mere possession of a trade secret does not constitute misappropriation); see also FLIR Sys., Inc. v. Parrish, 174 Cal.App.4th 1270, 1279 (2009) ("Mere possession of trade secrets by a departing employee is not enough for an injunction.").  Moreover, Sunbelt has not refuted Victor's claim that he has not copied or retained any trade secret information from Sunbelt's electronic devices.  Victor Decl. ¶¶ 9-11.

Next, Sunbelt attempts to highlight the fact that on the day he submitted his two-week notice, Victor emailed to his sales commission summary to his personal email account.  Mot. at 8; Elbrecht Decl. ¶ 18 and Ex. D.  According to Victor, he emailed this information to himself as a means of ensuring that Sunbelt properly paid him for all commissions owed.  Victor Decl. ¶ 20.  Sunbelt does not rebut Victor's explanation, but instead contends, again on information and belief, that Victor used this information to lure Sunbelt employees to seek employment with Ahern and to solicit existing Sunbelt customers by offering lower prices.  Elbrecht Decl. ¶ 19.  Sunbelt fails to proffer any facts to support the basis of its "information and belief."  In addition, there is no evidence to support Sunbelt's accusation that Victor used the commission summary to solicit

---

[3]  In view of the urgency attendant to a request for preliminary injunction, a district court has the discretion to consider otherwise inadmissible evidence "when to do so serves the purpose of preventing irreparable harm before trial."  Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1394 (9th Cir. 1984).  In this case, however, the Court finds that Sunbelt's claim that Victor misappropriated trade secrets in violation of the UTSA is based on nothing more than speculation and conjecture.

1    employees or Sunbelt customers.  The simple fact that Victor emailed himself ostensibly

2    proprietary information, without more, does not show misappropriation.[4]

3         Finally, Sunbelt claims that Victor repeatedly sought to obtain customer contact

4    information from current Sunbelt employees in order to solicit business on behalf of Ahern.

5    Mot. at 8.  In particular, Sunbelt attempts to make much of a text message exchange with

6    Martinez in which he allegedly "received confidential information about a current Sunbelt

7    customer [i.e., Bar A Construction] in exchange for an undisclosed 'favor.'"  Mot. at 8.

8    Victor denies requesting information regarding Bar A Construction and indicates that, in

9    fact, it was Martinez who was seeking the information from him.  Victor Decl. ¶ 29.

10   Sunbelt offers no evidence to the contrary. As for contacting other Sunbelt employees,

11   there is no actual evidence that Victor sought or obtained confidential customer information

12   from them.

13         In sum, the Court finds that Sunbelt has failed to make a sufficiently compelling

14   showing of misappropriation of trade secrets in violation of the UTSA.

15                  *c)*     ***Actual or Threatened Injury***

16         The third and final element of a UTSA claim is that the plaintiff suffered actual or

17   threatened injury.  See Cal. Civ. Code § 3426.2(a).  The evidence in support of this element

18   is weak.  There is no compelling evidence that Victor used Sunbelt's trade secrets to solicit

19   business from existing Sunbelt customers.  Although Sunbelt contends that one of its

20   customers, ATS, is now renting its forklifts from Ahern instead of Sunbelt, there is no

21   evidence that Victor initiated contact with the customer or that he used any of Sunbelt's

22

23

24

25

---

26        [4] While employed by Sunbelt, Victor emailed himself pricing information
    concerning two customers; however, it was his regular practice to do so in the course of

27   preparing for customer meetings.  Victor Decl. ¶¶ 19, 12. There is no evidence that
    following his departure from Sunbelt that Victor used this information improperly or that

28   he has had any contact with either customer.  Id.

1  confidential information to solicit its business.  To the contrary, ATS contacted Victor due
2  to its apparent dissatisfaction with Sunbelt's service.  Victor Decl. ¶ 25.[5]

3      In sum, the Court finds that Sunbelt has failed to demonstrate that it is likely to
4  succeed on the merits of its claim for misappropriation of trade secrets.

5                    **2.    Unfair Competition Claim**

6      Sunbelt alleges that Victor violated California Business and Professions Code
7  section 17200, better known as California Unfair Competition Law ("UCL"), by
8  misappropriating Sunbelt's confidential information to benefit himself and his new
9  employer, Ahern.  Compl. ¶¶ 71-72.  The UCL makes actionable any "unlawful, unfair or
10  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the
11  UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955,
12  959 (9th Cir. 2009).

13      The conduct underlying Sunbelt's UCL claim is the same as its claim for
14  misappropriation of trade secrets.  Compl. ¶ 72 ("Victor utilized Sunbelt's confidential
15  information to solicit Sunbelt's customers, thereby unfairly competing with Sunbelt and
16  depriving Sunbelt of its business.").  As discussed above, Sunbelt's showing of
17  misappropriation is tenuous, at best.  In addition, to the extent that Sunbelt's UCL claim is
18  based on the same nucleus of facts as its claim for misappropriation of trade secrets, it is
19  preempted by the UTSA.  See K.C. Multimedia v. Bank of Am. Tech,  & Operations, Inc.,
20  171 Cal. App. 4th 939, 958 (2009) ("In sum, we agree with the federal cases applying
21  California law, which hold that section 3426.7, subdivision (b), preempts common law
22  claims that are "based on the same nucleus of facts as the misappropriation of trade secrets
23  claim for relief.") (citing Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035
24  (N.D. Cal. 2005)).

25  _____

26      [5] Sunbelt objects on hearsay grounds to the statement in Victor's declaration that the
   representative from the customer, ATS, stated he was unhappy with Sunbelt's service.  The
   statement attributed to the representative is not being offered for the truth of the matter
27  asserted; that is, whether ATS was unhappy with Sunbelt.  Rather, the statement is offered
   only to show that it was ATS' representative who contacted Victor, and not vice-versa.
28  The objection is therefore overruled.

1    Accordingly, the Court finds that Sunbelt has failed to show a likelihood of success

2    on its claim for unfair competition.

3            **3.      Breach of Contract Claim**

4    "[T]he elements of a cause of action for breach of contract are (1) the existence of

5    the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

6    breach, and (4) the resulting damages to the plaintiff."  <u>Oasis West Realty, LLC v.</u>

7    <u>Goldman</u>, 51 Cal.4th 811, 821 (2001).  Here, Sunbelt alleges that Victor breached the

8    Agreement by: (1) "disclosing and misusing confidential information"; (2) "using Sunbelt's

9    proprietary and confidential information to contact and solicit the business of Sunbelt's

10   customers whom Defendant serviced while he was employed by Sunbelt"; and

11   (3) "contacting and soliciting Sunbelt's employees whom Sunbelt spent considerable time

12   and expense training[.]"  Compl. ¶ 54.

13           Victor contends that the restrictive covenants in the Agreement which prohibit him

14   from soliciting business from Sunbelt customers and soliciting Sunbelt employees for

15   employment are unenforceable under California Business and Professions Code section

16   16600.  Victor further argues that even if the covenants are enforceable, there is no

17   evidence that he breached any of the provisions of the Agreement.  Opp'n at 4-11.  The

18   Court discusses these arguments, in turn.

19           *a)       Validity of the Restrictive Covenants*

20   Under section 16600, "covenants not to compete are generally unenforceable."

21   <u>Fillpoint, LLC v. Maas</u>, 208 Cal.App.4th 1170, 1177 (2012).  This section provides:

22   "Except as provided in this chapter, every contract by which anyone is restrained from

23   engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal.

24   Bus. & Prof. Code § 16600.  This section "represents a strong public policy of the state."

25   <u>Edwards v. Arthur Andersen LLP</u>, 44 Cal.4th 937, 949 (2008).  As such, "[n]oncompetition

26   agreements are invalid under section 16600 in California, even if narrowly drawn, unless

27

28

they fall within the applicable statutory exceptions of sections 16601, 16602, or 16602.5." Id. at 954.[6]

Covenants not to solicit a former employer's customers are treated as covenants not to compete, and are invalid under section 16600—except as necessary to protect trade secrets.  E.g., Dowell v. Biosense Webster, Inc., 179 Cal.App.4th 564, 577 (2009) (invalidating a covenant not to solicit customers with whom employees had contact during their last 12 months of employment for 18 months after employment); Thompson v. Impaxx, Inc., 113 Cal.App.4th 1425, 1429 (2003) ("'Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets.'") (quoting Moss, Adams & Co. v. Shilling, 179 Cal.App.3d 124, 129 (1986)).

Sunbelt contends that the Agreement's proscription on the solicitation of its customers is valid because the provision "only prevents him from *using* Sunbelt's confidential information to solicit Sunbelt's customers."  Mot. at 10 (emphasis added).  Not so.  Section 5.2(iii) of the Agreement bars Victor from soliciting "any person or entity who purchased or leased products or services from [Sunbelt] at any time during the twelve (12) calendar months immediately preceding the termination of this Agreement for any reason and for or with whom Employee had contact, responsibility, or access to Confidential Information related to such person or entity . . . ."  Elbrecht Decl. Ex. A § 5.2(iii).  The proscription against solicitation is based on whether Victor had any contact with or responsibility with the customer or access to its "Confidential Information" during the twelve month period preceding his termination—*not* on Victor's use of confidential information to solicit the customer.  Indeed, under the terms of section 5.2(iii), Victor is

---

[6] California Business and Professions Code section 16601 permits the enforcement of covenants not to compete in connection with the sale of a business; section 16602 applies to the dissolution of or disassociation from a partnership; and section 16602.5 pertains to the dissolution from or termination of an interest in a limited liability company.

prohibited from soliciting the customer, even if it no longer does business with Sunbelt.[7] Based on the foregoing, the Court finds that the Agreement's restriction on Victor's ability to solicit Sunbelt's customers is unenforceable under section 16600.

Victor also challenges the restriction against soliciting Sunbelt employees for employment. Section 5.2(i) of the Agreement provides that: "Employee shall not directly or indirectly . . . solicit the employment of . . . any person who at any time during the twelve (12) calendar months immediately preceding the termination or expiration of this Agreement was employed by [Sunbelt]." A contractual provision preventing a departing employee from "raiding" his former employer's employees is "not void on its face under Business and Professions Code section 16600." Loral Corp. v. Moyes, 174 Cal.App.3d 268, 281 (1985). Victor argues that Loral is distinguishable on the ground that there is no evidence that he actually lured any Sunbelt employees to seek employment with Ahern. However, whether there is *evidence* that Victor solicited Sunbelt employees is a separate and distinct issue from whether the Agreement's restriction on soliciting Sunbelt's employee's for employment violates section 16600.[8] Thus, based on the arguments presented thus far, the Court is not persuaded by Victor's contention that the non-solicitation clause is invalid. The Court therefore addresses whether there is compelling evidence that Victor breached this non-solicitation provision.

---

[7] Though Victor distinctly challenges the enforceability of Sunbelt's restrictive covenants in its opposition, Sunbelt does not address the argument in its reply. The Court construes Sunbelt's lack of response as an admission that Victor's argument is meritorious. See Ramirez v. Ghilotti Bros. Inc., 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (finding that the failure to respond to argument amounts to a concession that the argument has merit).

[8] The restriction set forth in section 5.2(i) of the Agreement bars the solicitation of *any* Sunbelt employees who worked for Sunbelt during the twelve months preceding the termination or expiration of the Agreement. The Agreement thus appears to prohibit the solicitation of Sunbelt's employees, regardless of whether that employee still is employed by Sunbelt. The parties, however, do not address the import of this apparent restriction as it pertains to section 16600.

### b)    Breach of Restrictive Covenants

Sunbelt contends that Victor breached the Agreement's restrictive covenants by "soliciting the employment of Sunbelt employees on behalf of its direct competitor, Ahern." Mot. at 11. The record does not support this contention. Although Victor acknowledges having contacted his former colleagues, he states that he did so to maintain existing friendships he had formed with these individuals. Victor Decl. ¶ 27. Sunbelt scoffs at Victor's explanation and cites Victor's purported attempt to meet with Martinez and O'Connell, an Ahern manager, as an example of Victor's attempts to solicit Martinez for employment and to obtain trade secrets from him. Reply at 4. However, there is no evidence that Victor was attempting set up a three-way meeting, that such a meeting took place, or that he had any nefarious motive in contacting Martinez. Victor Decl. ¶ 31. The evidence suggests that O'Connell and Martinez were former co-workers and Victor simply was asking Martinez, his close friend, whether he minded if O'Connell contacted him. Id.

Next, Sunbelt asserts that Victor breached the Agreement by using its confidential information to solicit customers. Mot. at 11. As support, Sunbelt claims that on August 30, 2013, Ahern delivered two forklifts to ATS, a customer of Sunbelt with which Victor had contact during his tenure with Sunbelt. Elbrecht Decl. ¶¶ 46-47. A few days later, ATS returned two forklifts to Sunbelt which it had rented for the last two years. Id. ¶ 48. Sunbelt accuses Victor of using confidential information acquired during the course of his employment with Sunbelt to lure ATS to Ahern. Id. ¶ 49. However, Sunbelt's accusation is made on information and belief without stating the factual basis therefor. In addition, the record shows that it was ATS which contacted Victor. For these reasons, the Court finds that Sunbelt has failed to demonstrate a likelihood of success on its claim for breach of contract.

### 4.    Breach of Duty of Loyalty Claim

California law recognizes a cause of action for breach of an employee's duty of loyalty. E.g., Stokes v. Dole Nut Co., 41 Cal.App.4th 285, 295 (1995) (noting that: "[A]n employer has the right to expect the undivided loyalty of its employees. The duty of

1  loyalty is breached, and may give rise to a cause of action in the employer.").  The Ninth

2  Circuit has described the duty of loyalty as "fiduciary-like."  Thorman v. American

3  Seafoods, Co., 421 F.3d 1090, 1098 (9th Cir. 2005).  The elements of a cause of action for

4  a breach of the duty of loyalty are: "(1) the existence of a relationship giving rise to a duty

5  of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by

6  that breach."  Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 410 (2007).

7        On information and belief, Sunbelt claims that Victor emailed a confidential sales

8  commission summary and customer pricing information to his personal email account in

9  order to solicit Sunbelt employees by offering higher commission rates and to solicit

10  Sunbelt customers by offering lower prices.  Mot. at 13.  However, there is no evidence that

11  at the time he emailed himself, or at any time while he was employed by Sunbelt, that

12  Victor intended to use such information to solicit Sunbelt employees or customers after his

13  separation.  Although there is evidence that Victor sought to contact Sunbelt employees and

14  customers, Sunbelt's assertion that Victor did so using its confidential information is, at this

15  juncture, entirely speculative.

16        Accordingly, Sunbelt has failed to demonstrate a likelihood of success on its claim

17  for breach of duty of loyalty.

18        **B.    IRREPARABLE HARM**

19        "A plaintiff who seeks preliminary injunctive relief must show 'that irreparable

20  injury is *likely* in the absence of an injunction.'"  M.R. v. Dreyfus, 697 F.3d 706, 728 (9th

21  Cir. 2012) (quoting Winter, 555 U.S. at 22); Alliance for the Wild Rockies v. Cottrell, 632

22  F.3d 1127, 1131 (9th Cir. 2011) ("plaintiffs must establish that irreparable harm is likely,

23  not just possible, in order to obtain a preliminary injunction.").  "Speculative injury does

24  not constitute irreparable injury."  Goldie's Bookstore v. Super. Ct., 739 F.2d 466, 472 (9th

25  Cir. 1984).

26        Sunbelt contends that Victor's alleged use of its confidential information to solicit its

27  employee and customers will undermine its goodwill and place it at a competitive

28  disadvantage with Ahern.  Mot. at 14.  This claim is unsupported.  There is no evidence that

1   any Sunbelt employee has been recruited by Victor or hired by Ahern.  As for Sunbelt's

2   customers, there is no evidence that Victor used any of Sunbelt's confidential information

3   to contact or solicit them.  Although one Sunbelt customer, ATS, now appears to be renting

4   from Ahern instead of Sunbelt, there is no evidence that Victor solicited ATS or that he

5   used any of Sunbelt's confidential information in his discussions with ATS.  Nor is there is

6   any evidence that ATS was not already an Ahern customer.  Indeed, it was ATS which

7   reached out to Victor, not vice-versa.  Victor Decl. ¶ 25.  In the absence of evidence that

8   irreparable injury is *likely* in the absence of an injunction, the Court finds that an injunction

9   is not warranted.  See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc., -- F.3d --,

10  2013 WL 6224288, *8-*9 (9th Cir. 2013) (reversing preliminary injunction where evidence

11  of irreparable harm was lacking).

12        **C.    BALANCE OF EQUITIES**

13        Before an injunction may be imposed, the movant must demonstrate that the balance

14  of equities tips in its favor.  Winter, 55 U.S. at 20.  Sunbelt argues the equities weigh in its

15  favor, as it only seeks to compel Victor to comply with the terms of his Agreement.

16  However, there is no evidence that Victor has failed to comply with the terms of the

17  Agreement. The equities therefore do not favor the imposition of an injunction where, as

18  here, the need for one has not been established.

19        **D.    PUBLIC INTEREST**

20        "In exercising their sound discretion, courts of equity should pay particular regard

21  for the public consequences in employing the extraordinary remedy of injunction."  Winter,

22  555 U.S. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982))

23  (quotation marks omitted).  In the instant case, the public interest will not be served by

24  entering an injunction to prevent conduct which Sunbelt has not shown has or is likely to

25  occur.  The final Winter factor thus weighs against entering a preliminary injunction.

26  **I.    CONCLUSION**

27        Sunbelt has failed to make a clear showing that it is entitled to a preliminary

28  injunction pursuant to the Winter standard.  Accordingly, for the reasons discussed above,

1

        IT IS HEREBY ORDERED THAT Sunbelt's motion for preliminary injunction is

2

DENIED.

3

        IT IS SO ORDERED.

4

Dated:  2/4/14                                    _____
                                                  SAUNDRA BROWN ARMSTRONG
5                                                 United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28